USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1044 LUIS JAVIER MOSQUERA-PEREZ, Petitioner, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent. ____________________ ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Nancy B. Norman for petitioner. _______________ Robert Kendall, Assistant Director, Civil Division, Office of _______________ Immigration Litigation, with whom Stuart E. Schiffer, Acting Assistant __________________ Attorney General, Civil Division, was on brief for respondent. ____________________ September 10, 1993 ____________________ CYR, Circuit Judge. Petitioner Luis Javier Mosquera- CYR, Circuit Judge. ______________ Perez ("Mosquera"), a resident alien convicted of an "aggravated felony," challenges a final order of the Board of Immigration Appeals ("BIA") denying his application for a withholding of deportation. We deny the petition for review. I I BACKGROUND BACKGROUND __________ Mosquera, a citizen of Colombia, entered the United States in June, 1980, and became a permanent United States resident in May, 1989. See 8 U.S.C. 1255(a). On May 3, 1990, ___ he was convicted of possessing one-half ounce of cocaine, with intent to distribute, in violation of Mass. Gen. L. ch. 94C, 32A. Mosquera received a suspended thirty-month prison sen- tence and three years' probation, with community service. On January 3, 1991, the Attorney General issued an order to show cause why Mosquera should not be deported as an alien convicted of an "aggravated felony," pursuant to 8 U.S.C. 1251(a) (2)(A)(iii), (B)(i),1 based on his Massachusetts drug ____________________ 1Section 1251 provides, in relevant part: (a) Classes of deportable aliens. Any alien . . . in the United States shall, upon the order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens: . . . . (2) Criminal offenses. (A) General Crimes . . . (iii) Aggravated felony. Any alien who conviction. At a preliminary hearing before an Immigration Judge, Mosquera was found deportable and, as an alien convicted of an aggravated felony, ineligible for either political asylum, see 8 U.S.C. 1158(d),2 or withholding of deportation,3 see 8 ___ ___ U.S.C. 1253(h). The BIA affirmed. ____________________ is convicted of an aggravated felony at any time after entry is deportable. . . . . (B) Controlled substances . . . (i) Conviction. Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled sub- stance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable. 8 U.S.C. 1251(a)(2)(A)(iii), (B)(i). 2Section 1158(d) provides: "An alien who has been convicted of an aggravated felony . . . may not apply for or be granted asylum." 8 U.S.C. 1158(d). Section 1158(d) was added to the Immigration and Nationality Act by the Immigration Act of 1990. 3Asylum and withholding of deportation are distinct forms of relief for aliens facing persecution in the nation of origin. The Attorney General has discretion to grant asylum, see 8 U.S.C. ___ 1158(a); withholding of deportation, in contrast, is mandatory when deportation to a particular nation would threaten the alien's life or freedom on account of race, religion, nationali- ty, membership in a particular social group, or political opin- ion, see 8 U.S.C. 1253(h)(1). Asylum confers broader benefits ___ than a withholding of deportation: an alien granted asylum may become a lawful permanent resident; withholding of deportation is "country-specific," in the sense that deportation to a "hospita- ble" country is not precluded. In re Salim, 18 I. & N. Dec. 311, ___________ 315 (1982); see INS v. Cardoza-Fonseca, 480 U.S. 421, 428 n.6 ___ ___ _______________ (1987). 3 II II DISCUSSION DISCUSSION __________ Our jurisdiction is founded in Section 106(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1105a(a). See Ravindran v. INS, 976 F.2d 754, 756 (1st Cir. 1992); Alvarez- ___ _________ ___ ________ Flores v. INS, 909 F.2d 1, 2 (1st Cir. 1990). Mosquera concedes ______ ___ that the conduct underlying his state-law conviction constituted an "aggravated felony" under the INA, see 8 U.S.C. 1101(a)(43), ___ and that he is therefore precluded from applying for asylum, see ___ 8 U.S.C. 1158(d). He contends, nonetheless, that his aggravat- ed felony conviction does not preclude a withholding of deporta- tion under 8 U.S.C. 1253(h)(2)(B).4 A. Effect of Aggravated Felony Conviction on A. Effect of Aggravated Felony Conviction on Eligibility for Withholding of Deportation Eligibility for Withholding of Deportation __________________________________________ Whether an aggravated felony conviction constitutes an absolute bar to withholding of deportation under section ____________________ 4Mosquera initially asserted a procedural due process claim as well. He argued that he was entitled to present evidence that he was not a "danger to the community," even though he had been convicted of an "aggravated felony." The evidence would have shown that the Massachusetts drug conviction involved a small amount of cocaine, that he had no prior arrests or convictions, and that he has strong family and community ties in the United States. The Fifth Amendment claim was abandoned at oral argu- ment. In addition, Mosquera's reply brief on appeal attempted for the first time to raise an equal protection claim that applica- tion of the Frentescu multi-factor test exclusively to aliens _________ convicted of crimes other than aggravated felonies creates an unconstitutional classification. See infra at pp. 11-13. As ___ _____ this claim was not presented to the BIA, we decline to address it. See Massachusetts, Dep't of Pub. Welfare v. Secretary of ___ _____________________________________ _____________ Agric., 984 F.2d 514, 523-24 (1st Cir. 1993) (discussing adminis- ______ trative waiver). 4 1253(h)(2)(B) presents a pure issue of statutory construction for plenary review, see Skidgel v. Maine Dept. of Human Servs., 994 ___ _______ ____________________________ F.2d 930 (1st Cir. 1993), and an issue of first impression in this circuit. We employ traditional tools of statutory construc- tion for determining congressional intent, see Dole v. United ___ ____ ______ Steelworkers of America, 494 U.S. 26, 35 (1989) (quoting NLRB v. ________________________ ____ Food and Commercial Workers, 484 U.S. 112, 123 (1987)), beginning ___________________________ with the language of the statute. We "assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose," Stowell _______ v. Ives, 976 F.2d 65, 69 (1st Cir. 1992) (quoting Morales v. ____ _______ Trans World Airlines, Inc., __ U.S. __, 112 S. Ct. 2031, 2036 ___________________________ (1992)), and we "resort to the legislative history and other aids of statutory construction only when the literal words of the statute create ambiguity or lead to an unreasonable result," id. ___ (quoting United States v. Charles George Trucking Co., 823 F.2d _____________ ___________________________ 685, 688 (1st Cir. 1987)). If the statutory language makes the intent of Congress clear and unambiguous, we give full effect to that intent; if the statute is "silent or ambiguous with respect to the specific issue," however, we do not simply impose our own construction on the statute, but give due deference to the BIA's interpretation of the INA unless it is arbitrary, capricious, or manifestly contrary to the statute. Chevron U.S.A., Inc. v. _____________________ Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 _________________________________________ (1984); see also INS v. Cardoza-Fonseca, 480 U.S. 421, 445 n.29 ___ ____ ___ _______________ (1987); Alvarez-Flores, 909 F.2d at 3. Nonetheless, "[t]he ______________ 5 judiciary is the final authority on issues of statutory construc- tion and must reject administrative constructions which are contrary to clear congressional intent." Chevron, 467 U.S. at _______ 843 n.9. Section 1253(h) provides as follows: (1) The Attorney General shall not deport or return any alien . . . to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nation- ality, membership in a particular social group, or political opinion. (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that __________ . . . (B) the alien, having been convicted by a ______ ____ _________ __ _ final judgment of a particularly serious _____ ________ __ _ ____________ _______ crime, constitutes a danger to the community _____ ___________ _ ______ __ ___ _________ of the United States; __ ___ ______ ______ . . . . For purposes of subparagraph (B), an alien ___ ________ __ ____________ ___ __ _____ who has been convicted of an aggravated felo- ___ ___ ____ _________ __ __ __________ _____ ny shall be considered to have committed a __ _____ __ __________ __ ____ _________ _ particularly serious crime. ____________ _______ ______ 8 U.S.C. 1253(h) (emphasis added). Mosquera argues that section 1253(h)(2)(B) contemplates a two-part analysis for determining whether an alien is precluded from a withholding of deportation: once it is determined that an alien has been convicted of a "particularly serious crime," a separate factual determination must be made that the alien poses a danger to the community of the United States.5 ____________________ 5The Fifth, Ninth, and Eleventh Circuits have rejected the contention that 1253(h)(2)(B) requires the dual showing urged by Mosquera. See Urbina-Mauricio v. INS, 989 F.2d 1085, 1087-88 ___ _______________ ___ (9th Cir. 1993); Martins v. INS, 972 F.2d 657, 660-61 (5th Cir. _______ ___ 1992); Arauz v. Rivkind, 845 F.2d 271, 275 (11th Cir. 1988). The _____ _______ 6 1. Plain Language of Section 1253(h)(2)(B) 1. Plain Language of Section 1253(h)(2)(B) _______________________________________ Mosquera contends that the phrase "having been convict- ed . . . of a particularly serious crime" modifies the word "alien" and thus narrows the universe of aliens who may be deter- _______ mined a "danger to the community." Mosquera further insists that a contextual comparison of section 1253(h) with the asylum provisions in section 1158(d) demonstrates that Congress well understood how to legislate a per se bar to eligibility for a ___ __ withholding of deportation had it so intended.6 We agree. But we think the statutory language is more ambiguous than Mosquera suggests. Mosquera asks, with considerable logical force, why Congress would have included the "danger to the community" clause at all if it intended that an alien's conviction of "a particu- larly serious crime" be dispositive and that there be no separate determination that the alien poses a danger to the community. See Allende v. Shultz, 845 F.2d 1111, 1119 (1st Cir. 1988) ("'A ___ _______ ______ familiar canon of statutory construction cautions the court to avoid interpreting a statute in such a way as to make part of it ____________________ Eleventh Circuit addressed the issue before 1253(h) was amended by the Immigration Act of 1990, however. See infra p. 12 (dis- ___ _____ cussing 1990 amendment). 6Mosquera also argues that the BIA's interpretation ignores the statutory language requiring a determination by the Attorney _____________ General, since no further determination would be necessary once an alien had been convicted of an aggravated felony. We are not persuaded. Mosquera overlooks the fact that section 1253(h)(2)- (B) requires the Attorney General to determine, in every case, whether an alien was convicted of an aggravated felony (or some other "particularly serious crime") and whether the judgment of ___ conviction is final. 7 meaningless. . . .'") (quoting Abourezk v. Reagan, 785 F.2d 1043, ________ ______ 1054 (D.C. Cir. 1986)); United States v. Ven-Fuel, Inc., 758 F.2d _____________ ______________ 741, 751 (1st Cir. 1985) ("All words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous."). On the other hand, as the government argues, had Congress intended two separate determinations, surely it could have made its intention plain, simply by writing section 1253(h)(2)(B) with "two coordi- nate clauses joined by a conjunction," viz., "the alien has been ___ convicted by a final judgment of a particularly serious crime and ___ constitutes a danger to the community of the United States." Ramirez-Ramos v. INS, 814 F.2d 1394, 1397 (9th Cir. 1987) (empha- _____________ ___ sis added); see Zardui-Quintana v. Richard, 768 F.2d 1213, 1222 ___ _______________ _______ (11th Cir. 1985) (Vance, J. concurring in result) (same); see ___ also Martins v. INS, 972 F.2d 657, 660-61 (5th Cir. 1992); Arauz ____ _______ ___ _____ v. Rivkind, 845 F.2d 271, 275 (11th Cir. 1988); Crespo-Gomez v. _______ ____________ Richard, 780 F.2d 932, 934 (11th Cir. 1986). Moreover, _______ Mosquera's contextual argument is counterbalanced by the presence of 8 U.S.C. 1226(e)(2)-(3), governing parole for aliens con- victed of aggravated felonies, which establishes various criteria for assessing recidivism to guide the Attorney General in deter- mining whether aggravated felons will pose a danger to society.7 ____________________ 7The Attorney General may release an alien whose country of origin denies or unduly delays acceptance of the alien, but only if "a procedure for review of each request for relief has been established," the procedure "includes consideration of the severity of the felony committed by the alien," and "the review 8 Thus, in a closely analogous context, section 1226(e)(2)-(3) demonstrates congressional cognizance of its option to require a separate determination of dangerousness to the community in regard to aliens who apply for withholding of deportation follow- ing an aggravated felon conviction. As the statutory language does not clearly and unambiguously favor either interpretation of section 1253(h), we turn to the legislative history. 2. Legislative History 2. Legislative History ___________________ Mosquera invites our attention to two particular com- ponents of the legislative history of section 1253(h). First, he cites several unenacted bills which would have imposed a per se ___ __ ban on withholding deportation of aggravated felons. Second, he cites a letter to the INS from Senator Edward M. Kennedy, Chair- man of the Senate Subcommittee on Immigration and Refugee Affairs and a cosponsor of the Immigration Act of 1990, see infra note ___ _____ 11, to the effect that Congress, in section 1253(h)(2)(B), contemplated that a showing of dangerousness to the community would be necessary in addition to proof of conviction of an aggravated felony. Before we evaluate these particular developments, it is helpful to place section 1253(h) in historical perspective. Prior to 1980, section 1253(h) conferred discretion upon the Attorney General to withhold the deportation of any alien who ____________________ concludes that the alien will not pose a danger to the safety of other persons or property." 8 U.S.C. 1226(e)(2)-(3). Section 1226(e)(2)-(3), like 1253(h)(2)(b), was added by the Immigra- tion Act of 1990. 9 would be subject to persecution in the receiving nation on account of race, religion, or political opinion. The Refugee Act of 1980, Pub. L. 96-212, 94 Stat. 107 (1980), amended section 1253(h) to comport with Article 33 of the United Nations Protocol Relating to the Status of Refugees ("Protocol"), Jan. 31, 1967, 19 U.S.T. 6223 (1968), to which the United States had acceded in 1968. The Protocol bound its parties to the substantive provi- sions of Articles 2 through 34 of the United Nations Convention Relating to the Status of Refugees ("Convention"), July 28, 1951, 189 U.N.T.S. 150.8 Article 33 of the Convention provides: 1. No Contracting State shall expel or re- turn ("refouler") a refugee in any man- ner whatsoever to the frontiers of ter- ritories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion. 2. The benefit of the present provision may not, however, be claimed by a refugee for whom there are reasonable grounds for regarding as a danger to the securi- ty of the country in which he is, or who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the com- munity of that country. 19 U.S.T. at 6276.9 ____________________ 8The United States is not a signatory to the Convention. 9Following the passage of the Refugee Act of 1980, section 1253(h) read: (1) The Attorney General shall not deport or return any alien (other than [certain aliens who partici- pated in the Nazi persecution or genocide]) to a country if the Attorney General determines that such alien's life or freedom would be threatened 10 Between 1980 and 1990, the operative standard for determining which crimes were "particularly serious" for section 1253(h)(2)(B) purposes was that set forth by the BIA in In re _____ Frentescu, 18 I. & N. Dec. 244 (1982): _________ While there are crimes which, on their face, are "particularly serious crimes" or clearly are not "particularly serious crimes," the record in most proceedings will have to be analyzed on a case-by-case basis. In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community. ____________________ in such country on account of race, religion, nationality, membership in a particular social group, or political opinion. (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that (A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nation- ality, membership in a particular social group, or political opinion; (B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States; (C) there are serious reasons for con- sidering that the alien has commit- ted a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or (D) there are reasonable grounds for regarding the alien as a danger to the security of the United States. 8 U.S.C. 1253(h) (1980). 11 Id. at 247. Once an alien's crime was deemed "particularly ___ serious," however, the BIA interpreted section 1253(h) as not ___ ___ ___________ _______ _______ __ ___ requiring a separate determination that the alien posed a danger _________ _ ________ _____________ ____ ___ _____ _____ _ ______ to the community. In re Carballe, 19 I. & N. Dec. 357 (1986) __ ___ _________ _______________ ("The phrase 'danger to the community' is an aid to defining a 'particularly serious crime,' not a mandate that administrative agencies or the courts determine whether an alien will become a recidivist.") modified on other grounds, In re Gonzalez, 19 I. & _________________________ ______________ N. Dec. 682 (1988). The Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5053 (1990), obviated the Frentescu analysis for _________ aggravated felonies by appending the following paragraph to section 1253(h): For purposes of subparagraph (B), an alien who has been convicted of an aggravated felo- ny shall be considered to have committed a particularly serious crime. 8 U.S.C. 1253(h) (1993).10 The BIA has continued to follow Carballe since the 1990 amendment to section 1253(h), by requir- ________ ing no separate finding of dangerousness to the community in the case of an alien convicted of an aggravated felony. See, e.g., ___ ____ Matter of A--- A---, Int. Dec. 3176 (B.I.A. 1992); Matter of _____________________ _________ ____________________ 10An "aggravated felony" includes "any drug trafficking crime as defined in [18 U.S.C. 924(c)(2)]." 8 U.S.C. 1101 (a)(43) (1993). A "drug trafficking crime" is "any felony punishable under the Controlled Substances Act (21 U.S.C. [ ] 801 et seq.), the Controlled Substances Import and Export Act (21 __ ____ U.S.C. [ ] 951 et seq.), or the Maritime Drug Law Enforcement Act __ ____ (46 U.S.C. App. [ ] 1901 et seq.)." 18 U.S.C. 924(c)(2). __ ____ 12 K---, Int. Dec. 3163 (B.I.A. 1991); Matter of U---M---, Int. Dec. ____ __________________ 3152 (B.I.A. 1991). The unenacted bills to which Mosquera directs our attention would have added a paragraph to the list of exclusions in section 1253(h)(2), making withholding of deportation unavail- able to aliens convicted of an "aggravated felony." See S. 2957, ___ 101st Cong., 2d Sess. 12 (1990); S. 2652, 101st Cong., 2nd Sess. 6112 (1990); H.R. 5284, 101st Cong., 2d Sess. 5 (1990). Mere nonadoption of these legislative bills is not probative of congressional intent in this instance, however, since "'several equally tenable inferences' may be drawn from such inaction, 'including the inference[,] [eminently reasonable here,] that the existing legislation already incorporated the offered change.'" Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633, 650 _______________________________ _________ (1989) (quoting United States v. Wise, 370 U.S. 405, 411 (1962)); _____________ ____ see also Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 382 n.11 ___ ____ _________________________ ___ (1969) ("unsuccessful attempts at legislation are not the best of guides to legislative intent"). In these circumstances, it is no less reasonable to infer that the proposed amendment failed of adoption because Congress was satisfied with the administrative and judicial construction then being given section 1253(h)(2) than to assume that Congress intended to signal its dissatisfac- tion with the prevailing construction. Mosquera refers us to a letter from Senator Kennedy to the INS, apparently suggesting that the BIA's current interpreta- 13 tion of section 1253(h) is contrary to congressional intent.11 As a general rule, however, post-enactment legislative history is accorded less weight than contemporaneous commentary. Ellenwood _________ v. Exxon Shipping Co., 984 F.2d 1270, 1277 n.8 (1st Cir.), cert. __________________ _____ denied, ___ U.S. ___, 113 S. Ct. 2987 (1993); cf. Regional Rail ______ ___ _____________ Reorganization Act Cases, 419 U.S. 102, 132 (1974) (post-passage ________________________ remarks cannot change Congress' intent). Even if we were to give weight to this letter, it would be counterbalanced by the pre- passage legislative history.12 Thus, our survey of the legisla- tive history of the Refugee Act of 1980 and the Immigration Act of 1990 yields no clear support for Mosquera's proposed interpre- tation of section 1253(h). Indeed, the Fifth Circuit, consider- ing the identical question in Martins, 972 F.2d at 661, found _______ unambiguous support for the BIA's interpretation in the legisla- tive history accompanying the Refugee Act. See supra note 12; ___ _____ ____________________ 11Mosquera simply cites to Martins, 972 F.2d at 661, which _______ referenced Senator Kennedy's letter: Martins' congressional intent argument is based on a letter to the INS from Senator Edward Kennedy[] . . . . The letter suggests that Congress intended to require the INS to make a dual showing of a conviction for an aggravated felony and a danger to the community. Id. at 661. ___ 12The Fifth Circuit found this argument "in direct conflict with the legislative history accompanying the Refugee Act" inasmuch as the House Judiciary Committee Report, H.R. Rep. No. 608, 96th Cong., 1st Sess. 18 (1979) "clearly states that the act intended to make those aliens[] 'who have been convicted of a particularly serious crime which makes them a danger to the community[]' ineligible for a withholding of deportation." Id. ___ (quoting H.R. Rep. No. 608, 96th Cong., 1st Sess. 18 (1979)). 14 see also Zardui-Quintana, 768 F.2d at 1220-23 (Vance, J., concur- ___ ____ _______________ ring). 3. Reasonableness of Agency Interpretation Reasonableness of Agency Interpretation _______________________________________ Since our examination of the language, structure, and history of section 1253(h) discloses no clear and unambiguous contrary legislative intent, the BIA's interpretation is entitled to deference unless arbitrary, capricious, or manifestly contrary to the statute. Chevron, 467 U.S. at 842-45. _______ Mosquera argues that the BIA's decision is poorly reasoned and inconsistent with prior Board decisions, thus entitled to no deference. Mosquera concedes that the BIA consis- tently has interpreted section 1253(h), before and since passage of the Immigration Act of 1990, as requiring but one determina- tion that the alien has been convicted of a "particularly serious crime," see Carballe, 19 I. & N. Dec. at 357. But he ___ ________ contends that a separate finding of dangerousness to the communi- ty was not necessary prior to 1990 because the Frentescu multi- _________ factor test for identifying "particularly serious crimes" re- quired the Attorney General to consider dangerousness to the community. He argues that nothing in the legislative history of the Immigration Act suggests that Congress, simply by equating aggravated felonies with "particularly serious crimes," intended to dispense with agency consideration of the alien's dangerous- ness to the community. He notes that the BIA continues to conduct individualized "dangerousness" determinations in cases involving crimes not classified in 8 U.S.C. 1101(a)(43) as 15 "aggravated felonies." See, e.g., Matter of B---, Int. Dec. 3164 ___ ____ ______________ (B.I.A. 1991) (Frentescu analysis used to determine whether an _________ "aggravated battery" was a "particularly serious crime"). According to Mosquera, the BIA's position is based on faulty reasoning in conflict with the statutory language. He commends instead the reasoning adopted by the Ninth Circuit in Beltran- ________ Zavala v. INS, 912 F.2d 1027 (9th Cir. 1990), where the court ______ ___ held that "the language of 8 U.S.C. 1253(h)(2)(B) as interpret- ed in Frentescu, commits the BIA to an analysis of the character- _________ istics and circumstances of the alien's conviction." Id. at ___ 1032. We are not persuaded. To be sure, the Ninth Circuit did note in Beltran-Zavala, prior to the 1990 amendment to section ______________ 1253(h), that "[i]f Congress wanted to erect per se classifica- ___ __ tions of crimes precluding immigration and nationality benefits, it knew how to do so." Id. Thereafter, however, in Urbina- ___ _______ Mauricio v. INS, 989 F.2d 1085, 1088 (9th Cir. 1993), the court ________ ___ effectively overruling Beltran-Zavala acknowledged that ___________ __________ ______________ Congress had indeed enacted just such a per se classification by ___ __ its 1990 amendment to section 1253(h)(2)(B). The focal inquiry under Frentescu before 1990 was _________ "whether the type and circumstances of the crime indicate that the alien will be a danger to the community," Frentescu, 18 I. & _________ N. Dec. at 248; danger to the community inhered in the definition of "particularly serious crime" and no independent "dangerous- ness" determination was necessary under section 1253(h)(2)(B). Since Congress is presumed to have been "aware of an administra- 16 tive or judicial interpretation of a statute, Lorillard v. Pons, _________ ____ 434 U.S. 575, 580 (1977), it is reasonable to infer that Congress intended the 1990 amendment to equate aggravated felonies with "danger to the community," obviating a redundant Frentescu _________ inquiry in cases involving aggravated felonies. The interpretation of section 1253(h)(2)(B) adopted by the BIA is not unreasonable, arbitrary, or capricious. Conse- quently, the refusal to conduct a separate inquiry into Mos- quera's dangerousness to the community was proper. The petition for review is denied. The petition for review is denied. _________________________________ 17