**Nemrod Jose ARAUZ, a/k/a Arauz–Acuna, Petitioner–Appellee,**

v.

**Perry RIVKIND, District Director, U.S. Immigration & Naturalization Service, District VI, Respondent–Appellant.**

No. 86–5415.

United States Court of Appeals, Eleventh Circuit.

May 16, 1988.

Leon B. Kellner, U.S. Atty., Esmeralda Cabrera, Sp. Asst. U.S. Atty., Miami, Fla., Donald A. Couvillon, Washington, D.C., for respondent-appellant.

James G. Roth, Miami Beach, Fla., for petitioner-appellee.

Before FAY and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

ON PETITION FOR REHEARING

**HATCHETT, Circuit Judge:**

The government appeals an order of the district court partially reversing a decision of the Board of Immigration Appeals (BIA) and remanding the alien/appellee's political asylum application to the Immigration and Naturalization Service (INS) for a full administrative hearing, even though the appellee had been convicted of "a particularly serious crime." We affirm.

The appellant, Nemrod Jose Arauz, is a native and citizen of Nicaragua. In 1979, shortly after the fall of the Samoza government, Arauz decided to leave Nicaragua and sign on as a crewman with an American vessel. On November 1, 1979, after obtaining a non-immigrant crewman's visa, he departed Nicaragua and entered the United States. Upon entry, immigration officials inspected and admitted him as a crewman for a period not to exceed twenty-nine days.

Arauz did not leave the United States with the ship, and at some later time, his wife, mother, and five brothers joined him, all without immigration status in the United States. On August 12, 1983, the United States Coast Guard Cutter Sea Hawk intercepted Arauz at sea while he was aboard a United States fishing vessel. The Coast Guard officers intercepted the vessel in international waters and found in excess of 4,000 pounds of marijuana aboard. Conse-quently, the officers arrested Arauz, took him to Key West, Florida, and paroled him into the United States for prosecution pursuant to 8 C.F.R. § 212.5(a)(3).

On August 16, 1983, the government charged Arauz, along with the other crewmen arrested aboard the vessel, with conspiracy to distribute and with possession with intent to distribute a controlled substance while aboard an American vessel, in violation of 21 U.S.C. §§ 955a and 955c. After being indicted on the same charges, Arauz pleaded guilty to conspiracy to possess with intent to distribute marijuana, in violation of section 955c, and the district court sentenced him to twenty months imprisonment.

On or about June 28, 1985, Arauz was released from prison into the custody of INS officials and served with a notice of referral to exclusion proceedings to determine whether he was entitled to enter the United States or would be excluded and deported. Following several appearances in court, the immigration judge determined that Arauz was properly in exclusion proceedings and that he was excludable pursuant to section 212(a)(23) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(23).[1] In addition, the immigration judge considered Arauz's application for political asylum. Pursuant to federal regulation, the immigration judge also considered application for political asylum as a request for withholding of exclusion or deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C.

---

1. Section 212(a)(23) provides in relevant part:

 (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 ....
 (23) Any alien who has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, ... exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufac-ture, production, compounding, transportation, sale, exchange, compounding, giving away, importation, or exportation of opium, coca leaves, heroin, marijuana, or any salt derivative or preparation of opium or coca leaves, or isonipecaine or any addiction-forming or addiction-sustaining opiate; or any alien who the consular officer or immigration officers know or have reason to believe is or has been an illicit trafficker in any of the aforementioned drugs....

 Although it has no bearing on our decision today, we note parenthetically that section 1182(a)(23) has been amended since the time of the immigration judge's decision. *See* Anti-Drug Abuse Act of 1986, No. 99–750, § 1751, 100 Stat. 3207, 3247.

§ 1253(h).[2]

Because Arauz's narcotics conviction was a "particularly serious crime, [which made him] a danger to the community of the United States," the immigration judge concluded that Arauz was statutorily ineligible for withholding of deportation under section 243(h) of the Immigration and Nationality Act. *See* 8 U.S.C. § 1253(h)(2)(B). Additionally, the immigration judge refused to consider Arauz's request for political asylum, reasoning that Arauz did not warrant asylum in the exercise of the immigration judge's discretion based on his 1984 narcotics conviction. On appeal, the Board of Immigration Appeals (BIA) dismissed Arauz's appeal, and affirmed the immigration judge's denial of Arauz's request for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1253(h).

██ On January 27, 1986, immigration officials directed Arauz to appear at the INS offices for deportation to Nicaragua on February 10, 1986. Arauz then filed the present petition for habeas corpus in district court, seeking review of the BIA's order of exclusion. Finding that the immigration judge acted arbitrarily and capriciously by failing to conduct a full evidentiary hearing on the asylum application, the district court remanded the case to the INS for a full hearing on the asylum application. In all other respects, the BIA's decision was affirmed. This appeal followed.[3]

The sole issue involves the district court's remand for an evidentiary hearing on the asylum claim in light of the conviction for a serious crime.

## DISCUSSION

The Immigration and Nationality Act contains two provisions whereby an alien may resist deportation to a country where he believes his life or freedom would be threatened on account of his political opinion. One is 8 U.S.C. § 1158 (1982), governing asylum requests [4]; the other is 8 U.S.C. § 1253(h) (1982), governing requests for withholding of deportation.[5] While the dis-

---

**2.** Title 8 C.F.R. § 208.3(b) (1987) provides:
Asylum requests made after the institution of exclusion or deportation proceedings shall be filed in quadruplicate with the docket clerk of the immigration court. Such asylum requests shall also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act.

**3.** We raised the question of jurisdiction prior to and at the oral argument. The district court's order is final within the collateral order exception of *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and within the doctrine of *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); *Gold v. Weinberger*, 473 F.2d 1376 (5th Cir.1973).

**4.** Title 8 U.S.C. § 1158(a) (1982) provides:
(a) Establishment by Attorney General: coverage
 The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.
*See also* 8 C.F.R. § 208.8(f) (1987), which provides in pertinent part:

(f) Denial—(1) General. The district director shall deny a request for asylum or extension of asylum status if it is determined that ...:
 (iv) The alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;
 (v) There are serious reasons for considering that the alien has committed a serious non-political crime outside the United States prior to the arrival of the alien in the United States
 . . . .

**5.** Title 8 U.S.C. § 1253(h) (1982) provides:
 (h) Withholding of deportation or return
 (1) the Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(19) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
 (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—
 (A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

tinction between political asylum and withholding of deportation has been somewhat muddled in this court's prior decisions, we note that sections 1253(h) and 1158 are separate and distinct provisions requiring different proceedings.

■ We agree with the district court that review of the record unequivocally shows that Arauz is statutorily ineligible for withholding of deportation. Title 8, U.S.C. § 1253(h)(2)(B) provides that withholding of deportation or return shall not apply if the Attorney General determines that the alien, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States...." As we said in *Crespo–Gomez v. Richard,* 780 F.2d 932 (11th Cir.1986), "th[is] statute ... does not connect its two clauses with a conjunction; rather the statute set forth a cause and effect relationship: the fact that the alien has committed a particularly serious crime makes the alien dangerous within the meaning of the statute." *Crespo–Gomez,* 780 F.2d at 934; *see also Zardui–Quintana v. Richard,* 768 F.2d 1213, 1222 (11th Cir.1985) (Vance, J., concurring in result). Thus, we concluded then, as we do today, that "the only finding required by section 1253(h)(2)(B) is that the alien has been convicted of a 'particularly serious crime.'" *Crespo–Gomez,* 780 F.2d at 934–35.

■ The narcotics offense of which Arauz was convicted is clearly a serious crime which, in turn, makes him a danger to the United States within the meaning of section 1253(h)(2)(B). Since Arauz's 1984 narcotics conviction was in the record, the immigration judge did not have to consider additional information concerning Arauz's request for deportation, because no amount of evidence would have negated the fact of Arauz's statutory ineligibility for withholding of deportation. Consequently, we hold that the immigration judge's decision to deny withholding of deportation is supported by substantial evidence. *Chavarria v. United States Department of Justice,* 722 F.2d 666, 670 (11th Cir.1984) (adopting "substantial-evidence" standard of review for withholding of deportation requests).

Arauz next contends that the Board of Immigration Appeals, as well as the immigration judge, abused its discretion in pretermitting his request for political asylum by failing to conduct a full evidentiary hearing on his asylum application. The government argues that while the right to request asylum generally carries with it the concomitant right to be heard on the application, the immigration judge acted well within his discretion. The government argues that no useful purpose would have been served by allowing the petitioner to introduce evidence because the immigration judge found in his discretion that Arauz did not warrant asylum.

■ As indicated in the decision of the Board of Immigration Appeals, the grounds for statutory ineligibility for the withholding of deportation are not applicable to asylum requests pursuant to 8 U.S.C. § 1158. As stated previously, although the procedures are closely related, asylum applications are filed pursuant to 8 U.S.C. § 1158, while withholding petitions are filed pursuant to 8 U.S.C. § 1253(h). Significantly, the language of section 1158 does not provide that the granting of a withholding of deportation petition is a necessary prerequisite to the granting of an application for political asylum.

The government correctly notes that the *district director* of the Immigration and Naturalization Service may deny a request for asylum if he determines that "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States...." 8 C.F.R. § 208.8(f)(IV).[6] We

(B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(C) there are serious reasons for considering that the alien has committed a serious non-political crime outside the United States

prior to the arrival of the alien in the United States; or

(D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

6. Pursuant to the applicable regulatory scheme, jurisdiction over an application for political asy-

have previously acknowledged that "though the regulations do not specifically delineate the factors to be taken into account by the immigration judge in denying asylum requests, it can be assumed that they are identical to those applicable to district directors." *Zardui–Quintana,* 768 F.2d at 1218.

 This is not to suggest, however, that an immigration judge is no longer obliged to entertain the merits of an asylum application once it has been determined that the alien has been convicted of a particularly serious offense. Even in that situation, the regulations still provide that the alien "may present evidence for the record in the exclusion or deportation proceedings." 8 C.F.R. § 208.10(c).[7] Notwithstanding the plain language of § 208.10(c), the government argues that the phrase "may present evidence" is mere precatory language which neither grants an alien the *right* to present evidence nor creates an obligation on the part of the immigration judge to consider such evidence. Although the government is correct that § 208.10(c) is phrased in terms of the verbal auxiliary "may" rather than "must," we reject the notion that the immigration judge may thus refuse to consider evidence concerning an alien's asylum application. Accepting this argument leads to the anomalous result that while § 208.10(c) would grant an alien the express right to present evidence, the decisionmaker would be under no corresponding obligation to consider it. We decline to graft this interpretation upon the regulation.

We note that with regard to Arauz's application for political asylum, our standard of review is abuse of discretion. *Garcia–Mir v. Smith,* 766 F.2d 1478, 1490 (11th Cir.1985), *cert. denied,* 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 375 (1986). Given the unambiguous language of the afore-mentioned regulations, we hold that the immigration judge acted arbitrarily and capriciously in pretermitting Arauz's request to *present* evidence in support of his request for political asylum. Although the nature and gravity of Arauz's conviction of a narcotics offense is an adverse factor which would militate heavily against him in the review of his asylum application, it is clear that under the Attorney General's regulations, his conviction is not the only evidence to be considered by the immigration judge. We caution, however, that we disavow that portion of the district court's judgment which requires that the immigration judge conduct a full evidentiary hearing on an alien's asylum application. We read the Attorney General's regulations as requiring only that the alien be afforded some meaningful opportunity to be heard, followed by the immigration judge's careful consideration of the weight to be given such evidence.

We are mindful that our disposition of this appeal seemingly turns upon a rather rigid application of the subtle nuances of the Attorney General's regulations. In reviewing the regulatory framework governing asylum requests, we note that the Attorney General has delegated to the district director jurisdiction to hear asylum requests which are made prior to the commencement of exclusion proceedings. 8 C.F.R. § 208.1(a). As mentioned previously, a district director may deny a request for asylum if he determines that "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States...." 8 C.F.R. § 208.8(f)(IV).

The regulations further provide that where an asylum application is denied by the district director, the alien may renew his request for asylum before an immigra-

---

lum made prior to the commencement of exclusion proceedings lies with the district director having jurisdiction over the port of entry. 8 C.F.R. § 208.1(a) (1987). Once an alien has been served with notice to appear in exclusion proceedings, however, the immigration judge has exclusive jurisdiction over the asylum application. 8 C.F.R. § 208.1(b) (1987). *See also Zardui–Quintana,* 768 F.2d at 1218–19.

7. In addition, the regulations provide that the immigration judge must consider an advisory opinion submitted by the Bureau of Human Rights and Humanitarian Affairs. 8 C.F.R. § 208.10(b).

tion judge in exclusion or deportation proceedings. 8 C.F.R. § 208.9. Thus, at this point, what was previously a wholly administrative procedure takes on judicial overtones. Similarly, the regulations provide that once an alien has been served notice of exclusion or deportation proceedings, the immigration judge has exclusive jurisdiction to hear the asylum application. 8 C.F. R. § 208.1(b) (1987). *See also Zardui–Quintana,* 768 F.2d at 1218–19.

As stated previously, while we assume that an immigration judge may deny an asylum application based on the fact that an alien has been convicted of a serious offense, the regulations provide that an immigration judge, unlike a district director, must consider, if offered, evidence other than the alien's conviction when considering a request for asylum. 8 C.F.R. §§ 208.10(b), (c).

Accordingly, the decision of the district court is affirmed.[8]

AFFIRMED.

---

**8.** The original opinion in this case is published at 834 F.2d 979. After considering petitions for rehearing, we file this corrected opinion. The petitions for rehearing are denied.