Begija AHMETOVIC, also known as Begi Ahonetajic, also known as Begi Ahmetovic, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 1084, Docket 94–4145.

United States Court of Appeals, Second Circuit.

Argued March 2, 1995.

Decided July 27, 1995.

Pamela Goldberg, Cuny School of Law, Main Street Legal Services, Flushing, NY, for petitioner.

M. Chinta Gaston, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Diogenes P. Kekatos, Steven I. Froot, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before: WINTER and LEVAL, Circuit Judges, and SAND, District Judge.*

WINTER, Circuit Judge:

Begija Ahmetovic, who now prefers to be known as Begije Mati, petitions for review of a decision of the Board of Immigration Appeals ("BIA"), which held that Mati is ineligible for political asylum under 8 C.F.R. § 208.14(c)(1) (1994) or withholding of deportation under 8 U.S.C. § 1253(h)(2)(B). We deny the petition.

## BACKGROUND

Mati is an Albanian Moslem from Serbia. She came to the United States on May 25, 1979, on a non-immigrant visitor's visa that authorized her to remain for two months. After her visa expired, Mati continued to live in the United States illegally.

On July 7, 1986, Mati shot and killed her first husband, Ali Ahmetovic, during a domestic dispute. In an affidavit, Mati asserts that Ali had physically abused her and that she shot him in self defense. Nevertheless, Mati pleaded guilty to first degree manslaughter and first degree criminal use of a firearm. She was sentenced to imprisonment for four to twelve years and was incarcerated from July 7, 1986 through November 13, 1990. Mati is now on probation and has re-married.

On November 9, 1990, the Immigration and Naturalization Service ("INS") served Mati with an Order to Show Cause and Notice of Hearing, charging that she was deportable as an overstay pursuant to the Immigration and Nationality Act (the "INA"), 8

---

* Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

U.S.C. § 1251(a)(2). A five-day deportation hearing was conducted before Immigration Judge ("IJ") Sabri Kandah. Mati admitted the allegations in the Order to Show Cause and conceded her deportability. However, she applied for asylum [1] and withholding of deportation [2] based on evidence that her life would be endangered if she were deported to Serbia.

On May 23, 1991, the IJ issued an oral opinion denying Mati's application. The IJ determined that Mati is ineligible for withholding of deportation because she was convicted of a "particularly serious crime" under 8 U.S.C. § 1253(h)(2)(B). The IJ also denied Mati's asylum application, holding that Mati failed to meet her burden of proof in establishing that she was a refugee under 8 U.S.C. § 1101(a)(42). The IJ found that Mati would be endangered if she returned to Serbia, but that the source of danger—a blood feud between Mati and the family of her first husband—was not a legally cognizable basis for asylum. As an alternative ground, the IJ denied Mati's application for asylum in the exercise of discretion.

Mati appealed the IJ's decision to the BIA. The BIA affirmed the IJ's ruling that Mati was ineligible for withholding of deportation under 8 U.S.C. § 1253(h)(2)(B). The BIA further held that Mati's conviction for manslaughter rendered her ineligible for asylum under 8 C.F.R. § 208.14(c)(1). This petition for review followed.

### DISCUSSION

Mati argues that: (i) the relevant asylum regulation, 8 C.F.R. § 208.14(c)(1), violates the INA because it exceeds the enabling statute and circumvents the exercise of discretion prescribed by the INA, (ii) the BIA erred in finding that Mati had been convicted of a "particularly serious crime" under both the asylum regulation, 8 C.F.R.

§ 208.14(c)(1), and the withholding of deportation statute, 8 U.S.C. § 1253(h)(2)(B), and further erred by failing to consider separately whether Mati was a "danger to the community," and (iii) the relevant statutes and regulation contravene the United States' obligations under international treaty law and constitute a denial of due process of law. Because we believe the challenged regulation to be valid and must defer to the interpretation of the INA adopted by the BIA, we deny the petition.

### A. *Validity of 8 C.F.R. § 208.14(c)(1)*

The pertinent regulation concerning asylum, 8 C.F.R. § 208.14(c)(1), states that, "An application for asylum shall be denied if . . . [t]he alien, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community." The regulation implements 8 U.S.C. § 1158, which provides, in relevant part:

(a) Establishment by Attorney General; coverage

The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee. . . .

\*　　\*　　\*　　\*　　\*　　\*

(d) Aliens convicted of aggravated felony

An alien who has been convicted of an aggravated felony, notwithstanding subsection (a) of this section, may not apply for or be granted asylum.

8 U.S.C. § 1158(a), (d). Mati contends that the regulation's denial of asylum to aliens who have been convicted of a "particularly

---

**1.** In general, to be eligible for asylum one must be a "refugee." 8 U.S.C. § 1158(a). A "refugee" is one who has a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).

**2.** Title 8 U.S.C. § 1253(h)(1) provides, in pertinent part:

The Attorney General shall not deport or return any alien . . . to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

serious crime" exceeds the scope of 8 U.S.C. § 1158(d), which bars asylum only for aliens who have been convicted of an "aggravated felony." Mati's conviction for manslaughter is not considered an "aggravated felony"[3] but was considered a "particularly serious crime" by the BIA. Mati contends also that the INS is obligated to exercise its discretion in considering each and every asylum application and that the regulation impermissibly permits the INS to circumvent this obligation.

■ We must give substantial deference to administrative tribunals in their interpretations of statutory law. *Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994). However, Mati argues that the asylum regulation is contrary to congressional intent as expressed in the more limited language of the statute and therefore is not entitled to judicial deference. *See Perales v. Thornburgh*, 967 F.2d 798, 809 (2d Cir.1992), *vacated on other grounds*, — U.S. —, 113 S.Ct. 3027, 125 L.Ed.2d 716 (1993). In reviewing an agency's regulation,

> [i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue ... the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted).

■ We agree that the category of "particularly serious crimes" referred to in the regulation is broader than the class of "aggravated felon[ies]" defined in the statute. However, we do not believe that Congress's specific reference to "aggravated felon[ies]" in subsection (d) of the statute limits the agency's power under subsection (a) to impose a higher standard on asylum seekers. *See Garcia v. INS*, 7 F.3d 1320, 1326 (7th Cir.1993) (In amending the INA to add the provision concerning aggravated felons, "Congress' intention to *increase* the number of crimes that automatically bar eligibility for relief can scarcely be questioned.") (emphasis added). Subsection (a) of the statute confers broad discretion on the Attorney General to "establish a procedure" for an alien to apply for asylum. Thus, Congress "has explicitly left a gap for the agency to fill," and there was "an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2782. "Such legislative regulations are given *controlling* weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782. Applying this standard, we cannot conclude that the regulation inappropriately exceeds the scope of the statute or constitutes an impermissible interpretation of the statute.

**B.  Conviction of a "particularly serious crime" and "danger to the community"**

■ Mati argues that the BIA erred in applying the regulation concerning asylum, 8

---

**3.** The parties agree that Mati was not convicted of an "aggravated felony" under 8 U.S.C. § 1158(d). The definition of aggravated felony includes "any crime of violence ... for which the term of imprisonment imposed ... is at least five years." 8 U.S.C. § 1101(a)(43)(F) (as amended by Pub.L. No. 101–649, § 501(a)(3), 104 Stat. 5048). However, the statute specifically excludes those convicted of a crime of violence before November 29, 1990, *see* Pub.L. No. 101–649, § 501(b), 104 Stat. 5048. Mati was convicted of manslaughter in 1986.

Although the Miscellaneous and Technical Amendments of 1991 provide support for holding that Mati was nevertheless convicted of an aggravated felony, *see* Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. No. 102–232, § 306(a)(13)(1), 105 Stat. 1752 (stating that aggravated felony definition "shall apply to convictions entered before, on, or after the date of the enactment of this Act [November 29, 1990]"); *Feroz v. INS*, 22 F.3d 225, 227 (9th Cir.1994) ("a party convicted of an aggravated felony is precluded from obtaining political asylum, regardless of the date of conviction"); *Martins v. INS*, 972 F.2d 657, 660 (5th Cir.1992) (same), the government has stated in a letter brief that Mati was not convicted of an aggravated felony because the Technical Amendments do not alter the effective date for aggravated felony convictions established in section 501(b) of the Immigration Act of 1990. Given our disposition of this matter, the outcome is not affected, and we do not address the issue.

C.F.R. § 208.14(c)(1), as well as the relevant statute concerning withholding of deportation, 8 U.S.C. § 1253(h)(2)(B). At issue is the BIA's determination that Mati was convicted of a "particularly serious crime." The withholding of deportation statute, which is similar to the asylum regulation, states that withholding of deportation "shall not apply to any alien if the Attorney General determines that ... the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." *Id.* Mati contends that the BIA erred by failing to consider the underlying circumstances of her conviction for manslaughter before finding that she had been convicted of a "particularly serious crime" and by failing to make a separate determination as to whether she constituted a "danger to the community."

The BIA determined that first degree manslaughter is a "particularly serious crime" *per se* and declined to examine the circumstances and events that led to Mati's guilty plea. Mati contends that the BIA should have conducted a broad inquiry into the facts underlying her conviction in order to determine whether the crime was "particularly serious." She cites *In re Frentescu*, 18 I. & N. Dec. 244 (BIA 1982), to support her contention. However, *Frentescu* plainly acknowledges that certain crimes are *per se* "particularly serious" and do not require in-depth analysis: "[T]here are crimes which, on their face, are 'particularly serious crimes....'" *Frentescu*, 18 I. & N. Dec. at 247. Only where there is room for disagreement as to whether the crime in question was "particularly serious" should the BIA resort to examining "such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Id.; see also In re Garcia–Garrocho*, 19 I. & N. Dec. 423 (BIA 1986) (where crime is *per se* particularly serious, no further inquiry into nature and circumstances of conviction is necessary).

Thus, we find no error in the BIA's determination that Mati was convicted of a "par-

ticularly serious crime." Mati's conviction of first degree manslaughter was an adjudication that she either "[w]ith intent to cause serious physical injury to another person, ... cause[d] the death of such person," or "[w]ith intent to cause the death of another person, ... cause[d] the death of such person ... under circumstances which do not constitute murder because [she] acte[d] under the influence of extreme emotional disturbance." N.Y.Penal Law § 125.20. It is surely a "particularly serious crime" when a person takes the life of another with the intent to cause serious injury or to kill. *See Saleh v. United States Dep't of Justice*, 962 F.2d 234, 237–38 (2d Cir.1992) (noting IJ's finding that first-degree manslaughter conviction constitutes "particularly serious crime"). Although Mati now provides evidence of mitigating circumstances, that evidence does not alter the fact that she was convicted of first-degree manslaughter.

Nor do we find persuasive Mati's argument that only "aggravated felonies" are *per se* "particularly serious crimes." Although 8 U.S.C. § 1253(h)(2) provides that, "[f]or purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime," it does not exclude all other crimes from the category of "particularly serious crimes."

■ However, we are more troubled by the BIA's failure to give separate consideration to whether Mati is a "danger to the community." The BIA has long held that the determination of whether an alien poses a danger to the community is subsumed within the analysis of whether the crime is "particularly serious." *In re Carballe*, 19 I. & N. Dec. 357 (BIA 1986). In its view, anyone who has committed a "particularly serious crime" is "a danger to the community."

Arguably, the language "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community" suggests that a separate finding as to the alien's "dangerousness" is required. Otherwise, the clause concerning "danger to the community" might seem superfluous. *See Freytag v. Commissioner*, 501 U.S. 868, 877, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764

(1991) (Supreme Court decisions express "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment"); *United States Olympic Comm. v. Intelicense Corp.,* 737 F.2d 263, 266 (2d Cir.) (rules of statutory construction require a statute to be construed to give force and effect to each of its provisions rather than to render some of them meaningless), *cert. denied,* 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984).

However, the BIA's interpretation conflating the two requirements has been accepted by every circuit that has considered the issue. *See, e.g., Al–Salehi v. INS,* 47 F.3d 390 (10th Cir.1995); *Martins v. INS,* 972 F.2d 657, 661 (5th Cir.1992); *Arauz v. Rivkind,* 845 F.2d 271, 275 (11th Cir.1988); *Ramirez–Ramos v. INS,* 814 F.2d 1394, 1397 (9th Cir.1987). These circuits have noted that the phrase "having been convicted" modifies the word "alien" and that the statute does not connect by a conjunction that phrase with "constitutes a danger to the community." *Al–Salehi,* 47 F.3d at 394; *Martins,* 972 F.2d at 660–61; *Arauz,* 845 F.2d at 275; *Ramirez–Ramos,* 814 F.2d at 1397. They thus draw the conclusion that the statute "set[s] forth a cause and effect relationship" between the conviction and constituting a danger. *Martins,* 972 F.2d at 660; *Arauz,* 845 F.2d at 275; *Ramirez–Ramos,* 814 F.2d at 1397. Moreover, they rely upon legislative history that appears to support the BIA's interpretation. *Al–Salehi,* 47 F.3d at 394–95; *Martins,* 972 F.2d at 660; *Arauz,* 845 F.2d at 275; *Ramirez–Ramos,* 814 F.2d at 1397. The House Judiciary Committee Report states that the Refugee Act of 1980, which incorporated § 1253(h)(2)(B), intended to deny withholding of deportation to those aliens "who have been convicted of a particularly serious crime which makes them a danger to the community." H.R.Rep. No. 608, 96th Cong., 1st Sess. 18 (1979), *quoted in Martins,* 972 F.2d at 661.

Given the room for differing interpretations of the statutory language, the unanimity of the other circuits, the seeming intent of Congress as reflected in the legislative history, and the fact that we are reviewing an administrative interpretation, we believe that we may not "simply impose [our] own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782 (footnote omitted). Rather, *Chevron* instructs that "if the statute is . . . ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* With these considerations in mind, we accept the BIA's interpretation.

## C. *International treaties and due process*

■ Mati's arguments concerning international treaty law and the due process clause are without merit. The power of the government's political departments to expel or exclude aliens is extremely broad, and nothing in the Constitution or the provisions of international law cited by Mati is to the contrary. *Correa v. Thornburgh,* 901 F.2d 1166, 1173 (2d Cir.1990). Indeed, beyond Mati's right to a deportation hearing, which she received, there is no statutory entitlement to asylum that would give rise to a due process claim. As to the withholding of deportation remedy (which is mandated in certain circumstances), the imposition of substantive conditions upon a statutory entitlement does not violate due process. *Garcia,* 7 F.3d at 1326. Nor do we consider herein any of the several other factors not yet resolved or considered below which may ultimately impact on Mati's ability to satisfy the INS that she should remain in this country, *e.g.,* her husband's pending naturalization petition and the status of her children.

Denied.