23-6005 (L); 24-665
*Jimenez v. Bondi*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of April, two thousand twenty-five.

PRESENT:
> PIERRE N. LEVAL
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

DAYVID DE OLIVEIRA JIMENEZ,

> *Petitioner*,

v.

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,

> *Respondent*.

23-6005 (L), 23-6143 (Con), 23-6895 (Con), 24-665

---

FOR RESPONDENT:    ARTHUR L. RABIN, Trial Attorney, Civil Division, Office of Immigration Litigation, United States Department of Justice (Bryan Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Stephen J. Flynn, Assistant Director, Civil Division, Office of Immigration Litigation, *on the brief*), Washington, District of Columbia.

FOR PETITIONER:    Dayvid De Oliveira Jimenez, *pro se*, Batavia, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petitions for review of the Board of Immigration Appeals' ("BIA") decisions in 23-6005, 23-6143, and 23-6895 are **DENIED**, and the petition for review in 24-665 is **DISMISSED**.

Petitioner Dayvid De Oliveira Jimenez, a native and citizen of Brazil, seeks review of four BIA decisions:  (1) a November 29, 2022 decision dismissing as moot his interlocutory appeal from an immigration judge's ("IJ") denial of a continuance; (2) a January 25, 2023 decision denying remand and affirming an IJ's August 25, 2022 decision, which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"); (3) a July 25, 2023 decision denying reconsideration of those decisions; and (4) a February 12, 2024 decision denying reopening and administrative closure.  *In re Jimenez*, No. A055 769 136.  The first three petitions are consolidated and briefed; in the fourth petition, Jimenez moves for leave to proceed *in forma pauperis* ("IFP") and for summary reversal.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

The primary issues presented on appeal are Jimenez's challenges to the agency's denial of withholding of removal and CAT relief.[1]  We have reviewed the IJ's decision as modified and supplemented by the BIA, that is, with the BIA's additional explanation in response to Jimenez's appellate arguments and without the IJ's alternative ground for denial of relief due to inadequate corroboration, which the BIA did not affirm.  *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005).

---

[1]  Jimenez concedes that he is ineligible for asylum.

Where, as here, a petitioner was ordered removed for an aggravated felony, our jurisdiction is generally limited to constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(C), (D). However, this limitation does not apply to review of CAT claims, and the Supreme Court has left open whether it applies to withholding of removal. *Nasrallah v. Barr*, 590 U.S. 573, 581, 587 (2020). We review constitutional claims and questions of law *de novo*, *Dale v. Barr*, 967 F.3d 133, 138 (2d Cir. 2020), and we review factual findings related to the denial of CAT relief for substantial evidence, *Nasrallah*, 590 U.S. at 583–84; *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 583 (2d Cir. 2021). We review the denial of a continuance, remand, reconsideration, and reopening for abuse of discretion.[2] *See Paucar v. Garland*, 84 F.4th 71, 80 (2d Cir. 2023) (remand); *Flores v. Holder*, 779 F.3d 159, 164 (2d Cir. 2015) (continuance); *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168–69, 173 (2d Cir. 2008) (reopening, reconsideration).

## I.      Withholding of Removal Under the INA and CAT

The agency did not err in concluding that Jimenez was ineligible for withholding of removal on the ground that his conviction for second-degree strangulation, in violation of Conn. Gen. Stat. § 53a-64bb (2017), is a particularly serious crime. Because he was sentenced to less than five years' imprisonment, the conviction is not *per se* particularly serious. *See* 8 U.S.C. § 1231(b)(3)(B)(iv) ("[A]n [applicant] who has been convicted of an aggravated felony (or felonies) for which the [applicant] has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime."). If a crime is

---

[2] Contrary to the government's argument, we have jurisdiction over Jimenez's petition for review of the BIA's dismissal of his interlocutory appeal from the denial of a continuance (Case No. 23-6005 (L)) because the agency subsequently entered a final order of removal. *See Herrera-Molina v. Holder*, 597 F.3d 128, 132 (2d Cir. 2010) ("A premature petition for review of a not-yet-final order of removal can become a reviewable final order upon the adjudication of remaining applications for relief and protection, provided that the Attorney General has not shown prejudice.").

3

not *per se* particularly serious, the agency conducts a "two-step analysis," under which the agency first "considers whether the elements of the offense 'potentially bring the crime into a category of particularly serious crimes,'" and if they do, the agency may consider "'all reliable information . . . including the conviction records and sentencing information.'" *Ojo v. Garland*, 25 F.4th 152, 165 (2d Cir. 2022) (quoting *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007)). Relevant factors include "the nature of the conviction," "the circumstances and underlying facts of the conviction," "the type of sentence imposed," and "whether the type and circumstances of the crime indicate that the [applicant] will be a danger to the community." *Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008) (internal quotation marks and citation omitted).

As noted *supra*, it is an open question whether the jurisdictional limitation in Section 1252(a)(2)(C), precluding review of factual findings, applies to the denial of withholding of removal. *See Nasrallah*, 590 U.S. at 587. We need not resolve that issue here because Jimenez's arguments—that the agency applied the wrong legal standards and "overlooked" or "seriously mischaracterized" evidence—raise questions of law. *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009); *see also Barco-Sandoval v. Gonzales*, 516 F.3d 35, 40 (2d Cir. 2007).

Jimenez concedes that the elements of his offense potentially bring it within the ambit of particularly serious crimes. Indeed, the elements of the offense and the fact that it is an offense against a person make it a potentially particularly serious crime. *See* Conn. Gen. Stat. § 53a-64bb(a) (2017) ("A person is guilty of [violating the statute] when such person restrains another person by the neck or throat or obstructs such other person's nose or mouth with the intent to impede the ability of such other person to breathe or restrict blood circulation of such other person and such person impedes the ability of such other person to breathe or restricts blood

circulation of such other person."); *Nethagani*, 532 F.3d at 155 ("[C]rimes against persons are more likely to be particularly serious than are crimes against property.").

To the extent that Jimenez challenges the validity of his conviction on the grounds that his plea lacked a factual basis and that he was not properly informed of the potential immigration consequences, such challenges are not cognizable in removal proceedings. *See Lanferman v. BIA*, 576 F.3d 84, 88 (2d Cir. 2009) (explaining that collateral attacks on state convictions are not available in challenges to BIA removal decisions). Moreover, although Jimenez suggests that the agency, in contravention of its own precedent, failed to consider the relevant factors in determining that his strangulation conviction was particularly serious, we disagree. In particular, the BIA, citing our decision in *Nethagani* and its own precedent in *In re N-A-M-*, explicitly discussed the relevant factors, including, *inter alia*, "whether the type and circumstances of the crime indicate that the [noncitizen] will be a danger to the community."[3] App'x at 878 (internal quotation marks and citations omitted).

---

[3] We note that under our precedent, although the agency considered dangerousness in the context of examining Jimenez's prior conviction, it was not required to make a separate determination regarding his overall dangerousness to the community once it determined that the crime was particularly serious. *See, e.g., Ojo*, 25 F.4th at 165; *Flores*, 779 F.3d at 167; *see also Nehma v. Garland*, No. 20-3546, 2023 WL 2910631, at *1–2 (2d Cir. Apr. 12, 2023). We have "previously afforded *Chevron* deference to the BIA's interpretation that there is no separate danger-to-the-community analysis required when determining whether a crime is particularly serious," but noted that we may "overrule a prior decision if there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." *Nehma*, 2023 WL 2910631, at *1; *see Ahmetovic v. I.N.S.*, 62 F.3d 48, 52 (2d Cir. 1995) ("Arguably, the language 'having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community' suggests that a separate finding as to the alien's 'dangerousness' is required.") (reviewing prior version of statutory language). Since we determined that the agency was not required to make a determination regarding overall dangerousness, *Chevron* has been overruled. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). However, in *Loper Bright*, the Supreme Court stated that its decision did "not call into question prior cases that relied on the *Chevron* framework," and that "[t]he holdings of those cases that specific agency actions are lawful . . . are subject to statutory *stare decisis* despite the Court's change in interpretative methodology." *Id*.

Jimenez further argues that the agency overlooked or mischaracterized evidence regarding the circumstances surrounding his conviction by: (1) refusing to consider his credible testimony about the circumstances of his offense (*i.e.*, that he was attempting to restrain his girlfriend because she was attacking him); (2) overstating his prior prison sentences and overlooking that his strangulation sentence was fully suspended; and (3) not considering that U.S. Immigration and Customs Enforcement ("ICE") chose not to arrest him until years later. We are unpersuaded.

As the BIA found, Jimenez's arguments about the circumstances of his offense amount to a challenge to the validity of his conviction because the circumstances he alleged appear to fall within Connecticut's definition of self-defense. *See* Conn. Gen. Stat. § 53a-19 (codifying self-defense); *Lanferman*, 576 F.3d at 88. Even absent an adverse credibility determination, the agency was entitled to discredit this aspect of his testimony because it was inconsistent with his conviction. *See Garland v. Ming Dai*, 593 U.S. 357, 366 (2021) (explaining that the agency may reject some or all of a credible applicant's testimony when it is contradicted by "contrary evidence of a kind and quality that a reasonable factfinder could find sufficient" (internal quotation marks and citation omitted)).

---

Here, as discussed *infra*, Jimenez's challenges to the agency's determination focus on its analysis of the circumstances surrounding his strangulation conviction under the agency's own precedent, and "[he] does not agree with the Board's finding that [he] is a danger to the community" based on that conviction. Petitioner's Br. at 68; *see also id.* at 58–59 (arguing the BIA should have considered all factors, "not simply whether the type and circumstances of the crime indicate that the [noncitizen] will be a danger to the community" (internal quotation marks omitted)). However, he does not argue that a separate, overall dangerousness determination was required, nor has he filed a supplemental brief asking us to reconsider our precedent in light of *Loper Bright*. Therefore, we need not consider the impact of the Supreme Court's decision in *Loper Bright* on our precedent. *See Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998) ("Although *pro se* litigants are afforded some latitude in meeting the rules governing litigation, pursuant to [Federal Rule of Appellate Procedure] 28(a) we need not, and normally will not, decide issues that a party fails to raise in his or her appellate brief." (internal citations omitted)).

The IJ's decision was ambiguous as to whether he considered that Jimenez's three-year sentence was suspended, but the BIA clearly acknowledged that the sentence was suspended and rejected Jimenez's argument that the lack of jail time established that his crime was not particularly serious. That supplemental reasoning is part of the decision now under review. *See Yan Chen*, 417 F.3d at 271. The IJ also stated, by way of background, that Jimenez had been sentenced to approximately eight years of incarceration during his time in the United States. Although on appeal Jimenez challenges that statement as factually erroneous, it was not part of the IJ's "particularly serious crime" analysis and, in any event, the BIA did not reference that statement, let alone rely on it, when affirming the IJ's decision. In addition, the agency was not required to adopt Jimenez's view that a suspended three-year sentence is equivalent to no incarceration because "[a]ny reference to a term of imprisonment or a sentence" in the INA "is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." 8 U.S.C. § 1101(a)(48)(B).

In sum, we discern no error in the agency's determination that Jimenez's conviction for second-degree strangulation constitutes a particularly serious crime, under Section 1231(b)(3)(B)(ii), and that he was ineligible for withholding of removal on that ground.

## II. Deferral of Removal Under the CAT

Jimenez's conviction does not bar deferral of removal under the CAT. *See* 8 C.F.R. § 1208.17(a). A CAT applicant "bears the burden of proving" that "he more likely than not would be tortured by, or with the acquiescence of, government officials acting in an official capacity." *Quintanilla-Mejia*, 3 F.4th at 592 (internal quotation marks and citation omitted); *see* 8 C.F.R. §§ 1208.16(c)(2), 1208.17(d)(3), 1208.18(a)(1). To establish acquiescence, the applicant must

show that "the public official, prior to the activity constituting torture, [will] have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). In evaluating a CAT claim, the agency considers "all evidence relevant to the possibility of future torture," including, "[e]vidence of past torture," the applicant's ability to "relocate to a part of the country . . . where he . . . is not likely to be tortured," and "gross, flagrant or mass violations of human rights within the country of removal." *Id.* § 1208.16(c)(3).

The agency did not err in concluding that Jimenez failed to establish that he was more likely than not to be tortured by, or with the acquiescence of, a public official in Brazil. Jimenez testified that police officers in Brazil assaulted him twice: once when he was found with a small amount of marijuana when he was approximately fifteen years old, and again when he was in custody as a murder suspect in 2001 (when he was approximately seventeen years old). The agency reasonably found this testimony unpersuasive because Jimenez omitted these allegations from his written application, the application was prepared with counsel, and a serious police assault was important to his claim that he was likely to be tortured. *See Ming Dai*, 593 U.S. at 366; *Hong Fei Gao v. Sessions*, 891 F.3d 67, 78–79 (2d Cir. 2018) (explaining that omissions may be relevant in assessing testimony, and that the probative value of an omission depends on whether the omitted facts "are ones that a credible petitioner would reasonably have been expected to disclose under the relevant circumstances"). Jimenez argues that the omission is attributable to former counsel but, as discussed *infra*, Jimenez has forfeited any ineffective assistance of counsel claims by failing to satisfy the procedural requirements.

Jimenez also alleged that gang members threatened to kill him because he reported their involvement in a murder to the police. The agency did not err in concluding that he failed to establish that the gang still intended to torture him or that it could carry out that intent if he

8

relocated within Brazil. Jimenez was threatened three times, and the threats were sent to his grandmother's house. The first threat was in 2001, but he lived unharmed in Brazil until 2004 by staying with a friend and an uncle. The last threat was in 2017—approximately five years before the hearing. Jimenez argues that the threats stopped only because his grandmother died in 2018, and the gang still intends to harm him. However, the agency was not required to make that inference. *See Siewe v. Gonzales*, 480 F.3d 160, 167 (2d Cir. 2007) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (internal quotation marks and citation omitted)). Jimenez has not presented evidence that the gang looked for him anywhere other than at his grandmother's house, and the record supports the IJ's conclusion that the gang is not centrally organized or active in all parts of Brazil.

Jimenez further argues that the agency overlooked evidence of disproportionate police violence against Afro-Brazilians like himself and his vulnerability to police or criminal violence as a person without family support in Brazil, as well as the scope of the gang's activities and the government's complicity in those activities. "[W]e presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006); *see also Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) (explaining that the agency need not "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner," so long as it "has given reasoned consideration to the petition, and made adequate findings" (internal quotation marks and citation omitted)). There is nothing in the record to suggest that the agency overlooked this evidence or that it otherwise erred in its consideration of that evidence. The background evidence before the IJ reflects significant police and gang violence including against young Afro-Brazilian men, government efforts to curb gangs, and that some government officials

9

are suspected of complicity with gangs. Considered as whole, this evidence does not compel the conclusion that a person in Jimenez's circumstances—a thirty-nine-year-old Afro-Brazilian man without family support—is more likely than not to be tortured by the police or by a gang with government acquiescence. *See Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (explaining that an applicant must present "particularized evidence" beyond general country conditions to establish a CAT claim); *cf. Quintanilla-Mejia*, 3 F.4th at 593–94 (finding that the record did not compel the conclusion that the Salvadoran government would acquiesce to gang torture where the petitioner had not reported prior gang assaults to the government, and country conditions evidence showed that gang violence persisted—including in instances involving police misconduct—but also that the government was taking steps to combat gang violence). Finally, contrary to Jimenez's argument, the BIA appropriately reviewed the IJ's factual findings for clear error and legal conclusions *de novo.* 8 C.F.R. § 1003.1(d)(3)(i), (ii).

## III. Denial of a Continuance

Jimenez also argues that the IJ erred in denying his request for a continuance. An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. IJs have broad discretion and "are accorded wide latitude in calendar management." *Morgan v. Gonzales*, 445 F.3d 549, 551 (2d Cir. 2006). An IJ who denies a continuance abuses his discretion if "(1) his decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or (2) his decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Id.* at 551–52 (alterations adopted) (internal quotation marks and citation omitted). To challenge the denial of a continuance to obtain evidence, an applicant "at least must make a reasonable showing that the lack of preparation occurred despite a diligent good faith effort to be

ready to proceed" and "that [the IJ's] denial caused him actual prejudice and harm and materially affected the outcome of his case." *Matter of Sibrun*, 18 I. & N. Dec. 354, 356–57 (B.I.A. 1983).

As the government acknowledges, the BIA did not directly address the IJ's denial of a continuance. However, even assuming *arguendo* that the IJ erred in denying the continuance, remand is not required because the BIA's other rulings establish that there was no prejudice resulting from that denial. *See Gurung v. Barr*, 929 F.3d 56, 62 (2d Cir. 2019) (explaining that remand is not warranted if it would be "futile," that is, when the agency has "articulate[d] an alternative and sufficient basis" for the decision, when the erroneous reasoning is "substantially tangential" to non-erroneous findings, or when "overwhelming evidence in the record makes it clear that the same decision is inevitable on remand"). The IJ considered some late-filed evidence, and the BIA considered additional evidence in support of remand and concluded that it was not likely to change the outcome. The only evidence that Jimenez sought a continuance to obtain, which was not ultimately considered by the agency, was an expert report that would have addressed the gang's dangerousness and the Brazilian government's ability to protect him from it. However, such a report could have potentially affected the outcome only if the agency had determined that the gang had reason to single out Jimenez for torture and still intended to do so—and the agency concluded otherwise because of the small number of threats against him and the time that had elapsed since those threats. *See Mu Xiang Lin*, 432 F.3d at 160.

## IV. Denial of Remand

We similarly conclude that the BIA did not abuse its discretion in denying remand. A motion to remand to the IJ for consideration of new evidence presented on appeal is subject to the same standards as a motion to reopen. *See Li Yong Cao v. U.S. Dep't of Just.*, 421 F.3d 149, 156 (2d Cir. 2005). Such a motion "shall not be granted unless it appears to the Board that evidence

11

sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).

Jimenez contends that his evidence was previously unavailable because his counsel was ineffective. However, to obtain a remand based on ineffective assistance of counsel, a movant must substantially comply with the procedural requirements set forth in *Matter of Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1998). *See Jian Yun Zheng v. U.S. Dep't of Just.*, 409 F.3d 43, 46–47 (2d Cir. 2005). Under *Lozada*, a movant must include an affidavit detailing the agreement with former counsel concerning representation, proof that the movant notified counsel of the allegations and allowed counsel an opportunity to reply, and a statement regarding whether the movant filed a complaint against counsel with a disciplinary authority and, if not, an explanation for why that was not done. *See Twum v. INS*, 411 F.3d 54, 59 (2d Cir. 2005); *see also Debeatham v. Holder*, 602 F.3d 481, 484 (2d Cir. 2010). Jimenez attempted to comply with only the final requirement— namely, he filed complaints against his attorneys. Jimenez has thus forfeited his ineffective assistance claims by failing to substantially comply with the *Lozada* requirements.[4] *See Garcia-Martinez v. Dep't of Homeland Sec.*, 448 F.3d 511, 513 (2d Cir. 2006) (holding that an applicant "who has failed to comply substantially with the *Lozada* requirements forfeits his ineffective assistance of counsel claim in this Court" (alterations adopted) (internal quotation marks and citation omitted)).

---

[4] Because Jimenez's failure to substantially comply with *Lozada* is dispositive, we do not reach the BIA's alternative finding that Jimenez failed to show prejudice. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

## V. Denial of Reconsideration

The BIA also did not abuse its discretion in denying reconsideration of the above-referenced decisions. A motion for reconsideration must specify errors of fact or law in the BIA's decision and be supported by pertinent authority. 8 C.F.R. § 1003.2(b)(1). "The BIA does not abuse its discretion by denying a motion to reconsider where the motion repeats arguments that the BIA has previously rejected." *Jin Ming Liu v. Gonzales*, 439 F.3d 109, 111 (2d Cir. 2006) (per curiam). Rather than identifying errors in the BIA's January 2023 decision, Jimenez's motion for reconsideration merely repeated his arguments regarding ineffective assistance, the denial of a continuance, the IJ's perception of his criminal history, his version of the circumstances surrounding his conviction, the lack of a remand for consideration of his new evidence, and the likelihood of torture. Moreover, his argument that removal was inappropriate while he had a pending civil rights action in the district court had no bearing on whether there was error in the BIA's prior decision.[5]

## VI. Petition, IFP Motion, and Summary Reversal Motion in 24-665

Jimenez's remaining petition challenges the BIA's February 2024 denial of his motion to reopen and administratively close, and he moves for leave to proceed IFP on this petition. We may waive filing fees for litigants, like Jimenez, who are unable to pay, but must dismiss a petition

---

[5] Jimenez argues that the agency prejudged his case and demonstrated prejudice, but he has not shown a deprivation of due process because he merely points to adverse decisions, which are alone insufficient to demonstrate bias. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 434 F.3d 144, 155 (2d Cir. 2006) (finding a due process argument without merit where petitioner did not point to anything in the record to show deprivation of full and fair opportunity to be heard), *amended by Xiao Ji Chen*, 471 F.3d 315; *cf. Liteky v. United States*, 510 U.S. 540, 555 (1994) (explaining that judicial bias claims require a showing of "a deep-seated favoritism or antagonism that would make fair judgment impossible," and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). His remaining argument that the agency failed to consider hardship to his children is misplaced because hardship to others is not relevant to withholding or deferral of removal, and the agency did not deny any relief based on a weighing of discretionary factors.

13

that "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also* 28 U.S.C. § 1915(a)(1), (e)(2). As set forth below, because Jimenez's petition has no arguable basis in law or fact, we deny IFP status, dismiss the petition, and deny the motion for summary reversal as moot.

Jimenez's August 2023 motion to reopen was untimely because he filed it nearly eight months after his January 2023 final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i) (setting 90-day deadline from final order of removal). In that motion, Jimenez asserted that information about his immigration proceeding published in a district court decision could be publicly available in Brazil. Without more, that assertion does not constitute evidence of a materially changed condition in Brazil, as there is no evidence that Brazil retaliates against deportees who have sought asylum. *Id.* § 1229a(c)(7)(C)(ii) (providing an exception to 90-day deadline for changed country conditions). Jimenez's remaining arguments did not implicate any exception to the 90-day deadline or equitable tolling. Additionally, Jimenez's request for administrative closure lacks an arguable basis because it was based on a motion for leave to file a late criminal appeal, but the state court has since denied his motion. *See State v. Dayvid J.*, 348 Conn. 957 (2024).

*          *          *

We have considered Jimenez's remaining arguments and conclude that they are without merit. Accordingly, the petitions for review in 23-6005, 23-6143, and 23-6895 are **DENIED**. All pending motions and applications are **DENIED** and stays **VACATED**. In 24-665, the IFP motion is **DENIED**, the petition is **DISMISSED**, and motion for summary reversal is **DENIED AS MOOT**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14