**Martin Clement MULLEN-COFEE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Nos. 90–3982, 91–4050.**

United States Court of Appeals, Eleventh Circuit.

Nov. 5, 1992.

---

John E. Lund, Tampa, Fla., for petitioner.

Donald A. Couvillon, Lauri Flippu, U.S. Dept. of Justice, Office of Immigration Litigation, Civ. Div., Washington, D.C., Marty Spears, Legal Technician, Atlanta, Ga., Richard M. Evans, U.S. Dept. of Justice, Office of Immigration Litigation, Civ. Div., Washington, D.C., for respondent in No. 90–3982.

Donald A. Couvillon, Patricia A. Brock, Richard M. Evans, U.S. Dept. of Justice, Office of Immigration Litigation, Washington, D.C., Dist. Director, I.N.S., Miami, Fla., for respondent in No. 91–4050.

Before ANDERSON, Circuit Judge, MORGAN and JOHNSON *, Senior Circuit Judges.

ANDERSON, Circuit Judge:

## INTRODUCTION

In this appeal, petitioner Mullen–Cofee ("Mullen") seeks review of a final Order of Deportation. Mullen argues that the immigration judge ("IJ") and the Board of Immigration Appeals ("BIA") erred in finding that Mullen was not eligible for suspension of deportation or for voluntary departure. Mullen further argues that he was deprived of due process of law at his deportation hearing by alleged misrepresentations of INS trial counsel and by the IJ's failure to comply with the applicable regulations.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

## FACTS

Mullen is a native and citizen of Scotland. On June 2, 1973, he married Francine Marie Ear, a United States citizen, in Windsor, Ontario, Canada. They have four children. The three oldest children are natives and citizens of Canada and permanent residents of the United States. The youngest child was born in Inverness, Florida.

On October 3, 1977, in Essex County, Ontario, Mullen pled guilty to the lesser included charge of simple possession of marijuana and was sentenced to one day in jail and a $400 fine, followed by twelve months of probation. On September 9, 1981, Mullen was convicted of possession of marijuana for the purpose of trafficking and was sentenced to a period of two years, less one day, in prison.

On August 8, 1981, just prior to going to court on his trafficking case, Mullen moved his family to Florida and secured permanent residency for his three children. In February, 1983, Mullen entered the United States following his release on parole from prison in Canada. He entered the United States illegally, since the American Consulate in Toronto refused his application for an immigrant visa on account of his trafficking conviction.

At the time Mullen left Canada in 1983, he violated his parole, and Canadian officials issued a warrant for him. In August, 1985, Mullen had the warrant removed in order to visit his father and ailing mother in Canada. After staying in Canada for ten days, Mullen reentered the United States on August 12, 1985. Before Mullen was able to seek residency, the INS detected him and placed him under deportation proceedings.

## PROCEDURAL BACKGROUND

On August 29, 1985, the INS commenced deportation proceedings against Mullen by issuing an Order to Show Cause ("OSC").[1] The OSC charged Mullen with being deportable under section 241(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(1) (1988),[2] because "at the time of entry [he was] within one or more of the classes of aliens excludable by the law existing at the time of such entry...." OSC at 2. The OSC specified three grounds for applying section 1251(a)(1): (1) Mullen's 1985 entry into the United States without a valid entry document, see 8 U.S.C. § 1182(a)(20) (1988);[3] (2) Mullen's 1977 conviction for possession of marijuana in violation of section (3)(1) of the Narcotic Control Act of Canada, see 8 U.S.C. § 1182(a)(23) (1988); and (3) Mullen's 1981 conviction for possession of marijuana for the purpose of trafficking in violation of section (4)(2) of the Narcotic Control Act of Canada, see id.

By notice of May 8, 1987, the Office of the Immigration Judge in Atlanta, Georgia, notified Mullen that his case had been scheduled for a Master Calendar Hearing before an IJ on July 28, 1987, in Orlando, Florida. On July 28, 1987, Mullen appeared, without counsel, for his hearing. During the course of the abbreviated proceedings, Mullen admitted the truth of the allegations in the OSC. On the basis of these admissions, the IJ found Mullen deportable. In addition, because Mullen had admitted the OSC's allegations concerning his Canadian narcotics-related convictions, the IJ found Mullen ineligible for either permanent residency or voluntary departure. The IJ ordered Mullen deported to Canada, Mullen's country of choice, and, failing permission to enter, to Scotland, Mullen's country of citizenship.

Mullen subsequently challenged the IJ's decision before the BIA, and the BIA af-

---

**1.** The INS apprehended Mullen that same day in Tampa, Florida, served him with the OSC, and released him on his own recognizance.

**2.** The 1990 amendments to 8 U.S.C. § 1251(a) do not apply to this case since Mullen received notice of deportation proceedings prior to March 1, 1991. See Immigration Act of 1990, Pub.L. No. 101–649, § 602(d), 104 Stat. 4978, 5082.

**3.** The 1990 amendments to 8 U.S.C. § 1182(a) do not apply to this case since Mullen entered the United States prior to June 1, 1991. See Immigration Act of 1990, Pub.L. No. 101–649, § 601(e)(1), 104 Stat. 4978, 5077.

**1378**

firmed the IJ's Order of Deportation. Mullen appeals from this final order.

### DISCUSSION

On appeal, Mullen contends that the BIA erred in finding that he was ineligible for suspension of deportation under 8 U.S.C. § 1254(a) (1988) and for voluntary departure under 8 U.S.C. § 1254(e) (1988).[4] Mullen stresses that 8 U.S.C. § 1251(a)(1) constituted the *only* ground for deportation charged in the OSC and articulated as a basis for the IJ's decision and argues that, accordingly, the BIA acted impermissibly when it imposed a requirement of ten years of continuous physical presence in the United States ("the ten-year requirement") in order for Mullen to establish eligibility for discretionary relief. Mullen notes that the ten-year requirement properly applies only to aliens within certain enumerated classes, *see* 8 U.S.C. §§ 1254(a), (e), and asserts that aliens found deportable under 8 U.S.C. § 1251(a)(1) are not subject to that stringent requirement.[5]

Mullen essentially concedes that his Canadian narcotics-related convictions could have constituted grounds for deportation under 8 U.S.C. § 1251(a)(11) (1988)[6] and that a finding of deportation under that section would have made him subject to the ten-year requirement. However, Mullen relies on *Matter of T*, 5 I. & N. Dec. 459 (BIA 1953), for the proposition that "an alien cannot be held ineligible for discretionary relief unless he is actually charged and deported on the specific grounds that makes [sic] him ineligible," Petitioner's

4. The 1990 amendments to 8 U.S.C. §§ 1254(a), (e) do not apply to this case since Mullen received notice of deportation proceedings prior to March 1, 1991. *See* Immigration Act of 1990, Pub.L. No. 101–649, § 602(d), 104 Stat. 4978, 5082.

5. For aliens who do not fall within the enumerated classes, 8 U.S.C. § 1254(a) requires only seven years of continuous physical presence in the United States to be eligible for suspension of deportation, and 8 U.S.C. § 1254(e) imposes no physical presence requirement to be eligible for voluntary departure.

6. Section 1251(a)(11) provides, in relevant part, that an alien shall be deported if the alien "at

Brief at 23–24 (Mar. 4, 1992). In *Matter of T*, the alien was neither charged with nor found deportable under a section that would bring him within the preclusion for voluntary departure. Nonetheless, a special inquiry officer found that the alien had failed to notify the Attorney General of his current address and, thus, was factually deportable under 8 U.S.C. § 1251(a)(5), a section that disqualifies an alien from seeking voluntary departure. The BIA ordered the alien's deportation proceedings reopened, stating that "an alien should not be held ineligible for voluntary departure as one deportable on the ground that he had failed to comply with [section 1251(a)(5)] unless his deportation on that ground is ordered." *Matter of T*, 5 I. & N. Dec. at 459.

Assuming, *arguendo*, that the legal proposition Mullen asserts—i.e., that an alien must be both charged with and found deportable on the specific grounds that make the alien subject to the ten-year requirement—is correct, we conclude that the BIA acted properly in applying the ten-year requirement. We distinguish *Matter of T* because the record in this case makes it clear that Mullen was actually charged with and found deportable for violation of Canada's narcotics laws, while the alien in *Matter of T* was neither charged with nor found deportable for failing to notify the Attorney General of his current address. In this case, the IJ found Mullen deportable under section 1251(a)(1), which provides for the deportation of any alien who "at the time of entry was within one or more of the

any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate."

classes of aliens excludable by the law existing at the time of such entry." 8 U.S.C. § 1251(a)(1) (1988). It is undisputed that the IJ found that Mullen fell within the broad provisions of section 1251(a)(1) based on the charges contained in the OSC and that these charges included allegations that Mullen had been convicted for violating Canada's narcotics laws on two separate occasions. Significantly, both the OSC and the IJ's decision refer to Mullen's convictions as falling under section 212(a)(23) of the INA, 8 U.S.C. § 1182(a)(23) (1988), which defines the class of aliens excludable because of prior narcotics convictions in language *identical* to that found in section 1251(a)(11). *Compare* 8 U.S.C. § 1182(a)(23) (1988) *with* 8 U.S.C. § 1251(a)(11) (1988). Thus, although the IJ explicitly relied on the broad language of section 1251(a)(1) to support his finding of deportability, the IJ's decision necessarily contained an implicit finding that Mullen is deportable under section 1251(a)(11). On the facts of this case, we agree with the BIA that permitting Mullen to escape the full effects of his controlled substance convictions simply because the IJ did not expressly find him deportable under section 1251(a)(11) "would be to elevate form over substance." BIA Decision at 5 (May 2, 1990).

█ We also reject Mullen's argument that the BIA erred in failing to consider in its determination of Mullen's eligibility for discretionary relief a pardon for Mullen's narcotics-related convictions that the Canadian Governor in Counsel allegedly granted on June 6, 1991.[7] We note that 8 U.S.C. § 1251(b) (1988) specifically provides that even a domestic executive pardon does not alter the deportability determination for

aliens "charged with being deportable from the United States under [8 U.S.C. § 1251(a)(11)]."[8] *See also Steinsvik v. Vinzant,* 640 F.2d 949, 956 n. 7 (9th Cir. 1981) (section 1251(b) "not applicable where the alien is deported under [section 1251](a)(11)"); *Rehman v. I.N.S.,* 544 F.2d 71, 74 (2d Cir.1976) (executive pardons "will *not* suffice to protect drug offenders") (emphasis in original); *Kolios v. I.N.S.,* 532 F.2d 786, 787–88 (1st Cir.), *cert. denied,* 429 U.S. 884, 97 S.Ct. 234, 50 L.Ed.2d 165 (1976) (same); *cf. La Porta v. United States,* 266 F.2d 645, 646 (5th Cir.1959) (section 1251(b) precludes judicial recommendation against deportability for narcotics violators).[9] Furthermore, even where Congress has provided for executive pardons to extinguish a ground for deportation, *see* 8 U.S.C. § 1251(b) (1988) (pardon for crimes involving moral turpitude), courts faced with claims similar to Mullen's have consistently held that, "for purposes of the United States immigration laws, a foreign pardon, in itself, does not wipe out an alien's foreign conviction or relieve him from the disabilities which flow therefrom." *Marino v. I.N.S.,* 537 F.2d 686, 691 (2d Cir.1976); *see also Matter of M,* 9 I. & N. Dec. 132, 134 (BIA 1960) (foreign pardon of no benefit for immigration purposes); *cf. Sohaiby v. Savoretti,* 195 F.2d 139, 140 & n. 2 (5th Cir.1952) (citing authorities on issue).[10]

█ Applying the ten-year requirement to the facts of Mullen's case, the BIA correctly determined that Mullen was statutorily ineligible for suspension of deportation or for voluntary departure. Although Mullen contends that the BIA erred in calculating the ten-year period based on Mullen's August 12, 1985, entry rather than on his

---

7. The record on appeal does not contain this pardon document.

8. Congress' 1990 repeal of 8 U.S.C. § 1251(b) does not apply to this case since Mullen received notice of deportation proceedings prior to March 1, 1991. *See* Immigration Act of 1990, Pub.L. No. 101–649, § 602(d), 104 Stat. 4978, 5082.

9. This case was decided prior to the close of business on September 30, 1981, and is binding

precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

10. We observe that, even after the 1990 amendments, the INA recognizes for purposes of determining deportability only "full and unconditional pardon[s] by the President of the United States or by the Governor of any of the several States" that relate to crimes of moral turpitude or aggravated felonies, but not to narcotics-related violations. *See* 8 U.S.C.A. § 1251(a)(2)(A)(iv) (West Supp.1992).

February, 1983, entry following his release from prison in Canada, we do not reach the merits of this claim. Our review of the record convinces us that Mullen failed squarely to present this issue to the BIA and, thus, did not exhaust his administrative remedies with respect to the determination of the relevant entry date. *See Perlera–Escobar v. Executive Office for Immigration*, 894 F.2d 1292, 1296 (11th Cir.1990); *Florez–De Solis v. I.N.S.*, 796 F.2d 330, 335 (9th Cir.1986).

 Finally, Mullen argues that he was denied due process of law at his deportation hearing by alleged misrepresentations of INS trial counsel [11] and by the IJ's failure to comply with applicable regulations.[12] While we do not condone any procedural irregularities that may have occurred at Mullen's hearing, we agree with the BIA that Mullen has failed to demonstrate that the alleged misconduct resulted in the "substantial prejudice" necessary to prevail in a due process challenge to a deportation proceeding. *Ibrahim v. I.N.S.*, 821 F.2d 1547, 1550 (11th Cir.1987); *see also Cobourne v. I.N.S.*, 779 F.2d 1564, 1566 (11th Cir.1986) (to establish due process violation from denial of right to counsel at deportation proceedings, alien must establish that "presence of counsel might have affected the outcome"). Mullen has never denied that he entered the United States without a valid entry document in 1985 or that he was convicted in Canada of two narcotics-related offenses. Furthermore, Mullen casts no doubt on the INS' claim that, even had Mullen denied the charges in the OSC at his Master Calendar Hearing, the INS easily could have obtained properly authenticated documentation of his Canadian convictions. *See* Respondent's Brief at 40 (Apr. 28, 1992). Thus, even in the absence of any procedural defects, the IJ would necessarily have found Mullen deportable

and ineligible for both suspension of deportation and voluntary departure.

For the foregoing reasons, we AFFIRM the BIA's decision affirming the IJ's Order of Deportation.[13]

AFFIRMED.

---

**11.** Mullen alleges that the INS trial counsel convinced him that asking for a continuance to obtain a lawyer would be a waste of time and money. The BIA made no findings of fact with respect to this alleged misconduct. *See* BIA Decision (Oct. 8, 1991) at 3 & n. 2.

**12.** Our review of the hearing transcript generally supports Mullen's claim that the IJ failed to

follow regulations requiring, *inter alia*, that the IJ determine whether Mullen desired legal representation at his deportation hearing. *Cf.* 8 C.F.R. § 242.16(a) (1987).

**13.** The other issues Mullen raises on appeal are without merit and warrant no discussion.