Sony ESKITE, Petitioner,

v.

DISTRICT DIRECTOR and Immigration
and Naturalization Service,
Respondents.

No. 94–CV–2407 (SJ).

United States District Court,
E.D. New York.

Sept. 11, 1995.

Fried, Frank, Harris, Shriver & Jacobson by Douglas Baruch, Washington, DC, for petitioner.

American Civil Liberties Union by Judy Rabinovitz, New York City, for petitioner.

Zachary W. Carter, United States Attorney, Eastern District of New York by Scott Dunn, Assistant United States Attorney, Brooklyn, New York, for respondents.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

Before this Court is Sony Eskite's ("Petitioner") petition for a writ of habeas corpus, pursuant to 8 U.S.C. § 1105a, seeking review of the Board of Immigration Appeals' ("BIA") decision upholding a final order of exclusion. The BIA found Petitioner excludable from the United States, and denied his request to apply for asylum and withholding of deportation. Petitioner also seeks review of the Immigration and Naturalization Service's ("INS") more recent decision denying him parole.

## BACKGROUND

Petitioner is a native and citizen of Haiti who came to this country in 1981. In 1986, he was convicted in Florida for the sale of $30 of rock cocaine and for possession with intent to sell or deliver. A Florida state court judge sentenced Petitioner to thirty months in prison. After ten months of incarceration, however, Petitioner was deported to Haiti.

During 1991, Petitioner was a strong public supporter of exiled Haitian president Jean Bertrand Aristide. In October 1991, he participated in a demonstration that called for Aristide's return to Haiti. Petitioner learned that after the demonstration, members of Tonton Macoutes, a militia allied with the Haitian Army, had gone to his house looking for him. When they did not find Petitioner at home, the soldiers executed his father. Petitioner then went into hiding.

Petitioner attempted to flee Haiti by boat in December 1991. The United States Coast Guard interdicted the boat and brought him to the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo"). While Petitioner was at Guantanamo, the INS interviewed him and determined that he had a "credible fear" of persecution in Haiti. The INS therefore did not immediately repatriate him to Haiti.

Petitioner and other detainees in Guantanamo filed a class action lawsuit against the INS challenging their detention. This Court ordered the INS to allow the detainees to pursue their immigration proceedings in the United States. *Haitian Centers Council, Inc. v. Sale*, 823 F.Supp. 1028 (E.D.N.Y. 1993). On June 21, 1993, Petitioner arrived in the United States where the INS detained him and placed him in exclusion proceedings.

On January 4, 1994, during a hearing, an immigration judge in New York found Petitioner excludable, and therefore subject to deportation, pursuant to Section 212(a)(2)(A)(i)(II) of the Immigration & Nationality Act (the "Act"), 8 U.S.C. § 1182, *as amended* (1990) on the basis of petitioner's 1986 drug conviction. 8 U.S.C. § 1182(a)(2)(A)(i)(II) states that an alien who has been "convicted of .. a violation of ... any law or regulation of a State ... relating to a controlled substance (as defined in section 802 of Title 21) is excludable."

Following the immigration judge's ruling, Petitioner sought to apply for political asylum and withholding of deportation on the grounds that he has faced past persecution and will face additional persecution if he is returned to Haiti. He also sought a stay of the exclusion proceedings on the grounds that he had applied for clemency from the Governor of Florida. The immigration judge allowed Petitioner to file a legal brief setting forth his analysis as to how the pardon, if granted, would render Petitioner eligible to apply for asylum.[1]

---

1. The Act provisions governing asylum and withholding of deportation prohibit aliens from applying for or being granted either asylum or withholding of deportation if convicted of an aggravated felony, which the Act defines to include drug convictions. *See* 8 U.S.C. § 1158(d) and 8 U.S.C. § 1101(a)(43). In addition, an alien cannot receive asylum or withholding of deportation if convicted of a particularly serious crime. *See* 8 U.S.C. § 1253(h)(2)(B), *as amended*. For purposes of withholding of deportation, an aggravated felony is a particularly serious crime. *See* 8 U.S.C. § 1253(h)(2)(B), *as amended*.

On February 1, 1994, in a written decision, the immigration judge denied both Petitioner's request for a stay of the proceedings, and his request to apply for asylum and withholding of deportation.

On May 12, 1994, the BIA affirmed the decision of the immigration judge. The BIA stated that Petitioner had been convicted of an aggravated felony, and that he was therefore ineligible for asylum or withholding of deportation. In addition, the BIA rejected Petitioner's application for a stay of the proceedings, reasoning that Petitioner had been convicted of a final judgement and still had not been granted a pardon.

On June 24, 1994, Petitioner filed this petition for a writ of habeas corpus, challenging both his exclusion and the INS's determination that he is *per se* ineligible to apply for asylum and withholding of deportation. Petitioner challenges the exclusion order on the following four grounds:

(1) that the BIA erroneously denied Petitioner's request to apply for asylum on the basis of its retroactive application of the statutory provision barring aliens from applying for asylum if they have been convicted of an "aggravated felony";

(2) that the BIA erroneously denied Petitioner's application to stay the administrative proceedings based upon its failure to consider the fact that a pardon would remove the statutory prohibitions to Petitioner applying for asylum and withholding of deportation;

(3) that the BIA erroneously denied Petitioner's request to apply for asylum and withholding of deportation based upon an incorrect application of the relevant statutes—8 U.S.C. § 1253(h)(2) and 8 C.F.R. § 208.14—which preclude an alien convicted of a particularly serious crime from applying for asylum or withholding of deportation. Petitioner claims that the BIA applied the statutes incorrectly because, contrary to the BIA's decision, his drug conviction is not *per se* a particularly serious crime. Even if his drug conviction constitutes a particularly serious crime, Petitioner argues that the BIA

should have conducted a separate inquiry into whether he is, pursuant to the statutes, "a danger to the community"; and

(4) that this Court should estop the INS from deporting Petitioner due to the "unique circumstances of his detention ... and his admission to the United States." Petitioner's Mem. at 2.

On December 14, 1994, after the parties had fully briefed this petition, the Governor of Florida granted Petitioner a pardon for his 1986 conviction.

Petitioner also asks this Court to consider his challenge to the INS's determination denying him parole.[2]

## DISCUSSION

*I.  Standard of Review*

■ In reviewing a BIA decision upholding a final order of exclusion, a District Court must limit its review to the administrative record. *Kessler v. Strecker*, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082 (1939). A District Court is not empowered to conduct a *de novo* review of a final exclusion order. *See Correa v. Thornburgh*, 901 F.2d 1166, 1171 (2d Cir.1990). The scope of judicial review in such cases is narrow because the power to expel or exclude aliens is "a fundamental sovereign attribute exercised by the government's political department." *Correa v. Thornburgh*, 901 F.2d at 1173 (citing cases).

■ Accordingly, this Court is obliged to uphold the BIA's decision unless it is an abuse of discretion. *See, e.g., Dhine v. Slattery*, 3 F.3d 613, 619 (2d Cir.1993). This Court's inquiry is thus limited to whether there was evidence to support the BIA's finding, whether the statutory procedures which govern exclusions have been observed, and whether the petitioner was accorded a fair trial. *Kessler*, 307 U.S. at 34, 59 S.Ct. at 700; *United States ex rel. Tom We Shung v. Murff*, 176 F.Supp. 253, 257 (S.D.N.Y.1959), *aff'd*, 274 F.2d 667 (2d Cir.1960). If so, the BIA's determination is conclusive. *See, e.g., Murff*, 176 F.Supp. at 257.

**2.** The INS denied Petitioner's request for parole out of detention on April 13, 1995. Petitioner brought this issue to our attention by letter to the

Court dated May 15, 1995. By that time, the present habeas corpus petition had already been fully briefed.

To the extent that some of Petitioner's arguments involve questions of whether the BIA's interpretations of agency regulations were legally erroneous, this Court must apply the standard that governs review of an administrative agency's interpretation of its own regulations. In questions involving construction of rules and regulations by the promulgating agency, the Supreme Court has held that " 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 412, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). *See also Ahmetovic v. INS,* 62 F.3d 48, 51 No. 94–4145, 1995 U.S.App. LEXIS 20245, at *7 (2d Cir. July 27, 1995) ("[A district court] must give substantial deference to administrative tribunals in their interpretations of statutory law").

## II. *Retroactivity*

■ Petitioner contends that the BIA erroneously deemed his 1986 drug conviction an "aggravated felony," rendering him ineligible to apply for asylum. He argues that the BIA's retroactive application of the term aggravated felony to include his conviction, which occurred before Congress first introduced the term aggravated felony into immigration law, was improper.

An alien "who has been convicted of an aggravated felony ... may not apply for or be granted asylum" pursuant to 8 U.S.C. § 1158(d). This provision was added to the Act by § 515(a)(1) of the Immigration Act of 1990 (P.L. 101–649, Nov. 29, 1990, 104 Stat. 5053) (the "1990 Act"). The term "aggravated felony" is defined to include "illicit trafficking in a controlled substance ... including a drug trafficking crime as defined in Section 924(c)(2) of title 18, United States Code." 8 U.S.C. § 1101(a)(43).

Congress first introduced the term "aggravated felony" into the immigration laws through the Anti–Drug Abuse Act of 1988 ("ADAA"), Pub.L. Nos. 100–690, 102 Stat. 4181 (enacted November 18, 1988). The ADAA defined the term, but did not attach immigration consequences to aliens who committed aggravated felonies. The 1990 Act introduced the statutory bar to applying for asylum and withholding of deportation for aliens convicted of an aggravated felony. 1990 Act at § 515(a)(1)(d), 104 Stat. at 5053.

In 1991, Congress amended 8 U.S.C. § 1158(d) when it passed the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991. Pub.L. No. 102–232, § 306(a)(13)(B), 105 Stat. 1733, 1752 (1991) ("1991 Amendments"). The 1991 Amendments provide that 8 U.S.C. § 1158(d) applies to convictions entered "before, on, or after the date of the enactment of [the] Act." *Id.*

Petitioner argues that while the 1991 Amendments allow for the aggravated felony provision to be applied to convictions committed before the date of the enactment, "the statutory intent is unclear as to whether the retroactive implications should reach back indefinitely or only to aggravated felonies committed after 1988 when the term originated [in immigration law]." Petitioner's Mem. at 17.

The first BIA decision to address the question of whether the aggravated felony provisions of the Act apply to pre-ADAA convictions was *Matter of A–A* Int.Dec. 3176 (BIA 1992). In that case, the BIA held that although the ADAA did not specifically include a generally effective date for aggravated felony convictions, the construction of the statute as a whole suggested that the aggravated felony definition was meant to apply retroactively to all convictions, regardless of the date. *Id.* The BIA relied on *Matter of A–A* in rendering its decision in the present case.

Subsequent to the BIA's decision in *Matter of A–A,* a number of circuit courts also addressed this question. Some courts have found that Congress clearly intended to make 8 U.S.C. § 1158(d) retroactive. *See Feroz v. INS,* 22 F.3d 225, 226–27 (9th Cir. 1994) (affirming the BIA's retroactive application of 8 U.S.C. § 1158(d) to bar petitioner's asylum application, stating that "Congress has made clear its intention in this regard"); *Buitrago–Cuesta v. I.N.S.,* 7 F.3d 291, 295 (2d Cir.1993) (noting that, with re-

spect to 8 U.S.C. § 1158(d), "the concept of aggravated felony expressly applies retroactively"); *Martins v. INS*, 972 F.2d 657, 660 (5th Cir.1992) (reasoning that Congress inserted the "before, on, or after" language into section 1158(d) in order to bar all aggravated felons from applying for asylum). Other courts have found the statute ambiguous, but have nonetheless deferred to the BIA's interpretation as set forth in *Matter of A–A.* See *Barreiro v. INS*, 989 F.2d 62, 64 (1st Cir.1993) (holding that BIA's interpretation in *Matter of A–A–* is persuasive despite "presumption against retroactivity"); *De Osorio v. INS*, 10 F.3d 1034, 1039 (4th Cir.1993) (concluding that "the Board's interpretation [as to the effective date of the term 'aggravated felony'] is a permissible construction of the statute and is more consistent with the intent of Congress").

Petitioner argues that prior case law upholding retroactive applications of the aggravated felony classification must be reevaluated in light of the Supreme Court's recent decision in *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

*Landgraf* involved a former employee who filed a Title VII suit alleging sexual harassment. While the plaintiff's appeal of a district court dismissal of her suit was pending, the Civil Rights Act of 1991 (CRA) was passed by Congress. The Supreme Court ruled that the plaintiff was not eligible to seek relief under certain provisions of the CRA because the statute did not apply retroactively. *Id.* at ——, 114 S.Ct. at 1496. In rejecting the plaintiff's argument, the Court noted that there has historically been a presumption against statutory retroactivity due

to the "unfairness of imposing new burdens on people after the fact." *Id.* at ——, 114 S.Ct. at 1500. The Court found that nothing in the text or legislative history suggested that Congress "understood or intended" the CRA to apply retroactively. *Id.* at ——, 114 S.Ct. at 1508.

In *Landgraf*, the Supreme Court set forth a framework for determining whether a statutory provision has retroactive effect. First, a court must "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at ——, 114 S.Ct. at 1505. If the statute in question is not explicit with regard to retroactivity, the court must consider whether retroactive application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* Absent "clear congressional intent favoring such result[s]," the statute should not be applied retroactively. *Id.*

Because this Court finds that the plain language of the statute [3] indicates a congressional intent that 8 U.S.C. § 1158(d) apply retroactively, we reject Petitioner's argument that *Matter of A–A, Buitrago–Cuesta*, and other cases upholding retroactive application of the aggravated felony classification are erroneous under *Landgraf*.[4] The Second Circuit opinion in *Buitrago–Cuesta* therefore remains binding on this Court. Accordingly, this Court holds that the BIA did not abuse its discretion in applying 8 U.S.C. § 1158(d) retroactively to Petitioner's 1986 drug conviction.

---

3. The 1991 Amendment to 8 U.S.C. § 1158(d) is effective as if it were part of the 1990 Act. See 105 Stat. at 1759, § 310.

4. In *Samaniego–Meraz v. INS*, 53 F.3d 254 (9th Cir.1995), the Ninth Circuit recently applied different reasoning but reached the same result in regard to this issue. In that case, the Court considered whether an alien who had been convicted of a drug offense in 1986 was barred as an aggravated felon from applying for a discretionary waiver of deportation pursuant to 8 U.S.C. § 1182(c). Unlike the asylum provision, 8 U.S.C. § 1182(c) is silent as to whether it applies to pre-enactment convictions. The Court thus found

the statute ambiguous on the question of its effective date. Relying on *Landgraf*, however, the Court in *Samaniego–Meraz* reasoned that there was no presumption against retroactive application of the statute because "congressional repeal of a discretionary power to relieve an alien from deportation does not attach any new legal consequences to the pre-enactment events." *Samaniego–Meraz*, 53 F.3d at 256. The Court then deferred to the BIA's interpretation in *Matter of A–A*, holding that it "is a reasonable construction of the statute and is consistent with congressional intent to restrict the availability of ... relief [from deportation]." *Id.* at 257.

III. *Effect of the Pardon*

■ Petitioner's second challenge to the BIA's decision involves the question of whether a pardon negates all of the statutory prohibitions that flow from his drug conviction. The immigration judge determined that a pardon, which at that time had not yet been granted, would have no effect on Petitioner's eligibility to apply for asylum or withholding of deportation. The BIA affirmed the immigration judge's ruling.

Petitioner contends that the BIA failed to properly consider the effect of a pardon on his eligibility to apply for asylum. He argues that the BIA erroneously denied his request for a stay of the administrative proceedings pending the Governor of Florida's decision regarding Petitioner's application for clemency. Petitioner concedes that a pardon would not preclude the INS from relying on his 1986 drug conviction to exclude him. He argues, however, that a pardon would allow him to apply for asylum and withholding of deportation because he would no longer be classifiable as an "aggravated felon."

Petitioner asks that this Court decide whether the grant of a pardon by the Governor of Florida enables Petitioner to apply for asylum and withholding of deportation. The scope of this Court's review, however, limits our inquiry to the question of whether the BIA's interpretation of the statute in question was clearly erroneous.

In support of his argument, Petitioner cites to the statute pertaining to deportation, which provides in relevant part:

§ 1251. Deportable aliens

(a) Classes of deportable aliens. ....

(2) Criminal offenses

(A) General Crimes....

(iii) Aggravated felony.

Any alien who is convicted of an aggravated felony at any time after entry is deportable.

(iv) Waiver authorized.

Clauses (i), (ii), and (iii) shall not apply in the case of an alien with respect to a criminal conviction if the alien, subsequent to the criminal conviction has been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States.

(B) Controlled substances.

Any alien who at any time after entry has been convicted of a violation of ... any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is deportable.

8 U.S.C. § 1251(a)(2)(A)–(B) (1993).

Petitioner, relying specifically on the waiver provision set forth under 8 U.S.C. § 1251(1)(2)(A)(iv), claims that Congress intended for state pardons to negate an alien's status as an "aggravated felon" in all immigration contexts.

In listing classes of deportable aliens, Congress created one class entitled "Criminal Offenses" and subdivided this class into several distinct categories. Under the first category entitled "General Crimes," the statute authorizes a waiver of deportability if the alien is granted a full and unconditional pardon. 8 U.S.C. § 1251(a)(2)(A)(iv). Under the second category entitled "Controlled Substances," however, the statute does not authorize any such waiver of deportability. 8 U.S.C. § (a)(2)(B). Congress has thus specifically restricted the deportation waiver provision to certain categories of aggravated felons.

Petitioner argues that because Congress has not stated that pardons are unavailable to aggravated felons who have committed crimes involving controlled substances, the BIA's analysis was inconsistent with the plain language of the statute. This Court disagrees. The fact that Congress did not include a waiver provision under 8 U.S.C. § 1251(a)(2)(B) clearly indicates that Congress did not intend to waive deportability in the cases of aliens convicted of drug-related offenses.[5]

---

**5.** The Court of Appeals for the Eleventh Circuit reached the same conclusion in *Mullen–Cofee v.* *INS,* 976 F.2d 1375 (11th Cir.1992). In that case, the Court observed that

This Court finds that the immigration judge's analysis, affirmed by the BIA, was consistent with the plain language of the statute. Thus, this Court holds that there was sufficient support for the BIA's denial of Petitioner's request to stay the administrative proceedings pending the outcome of his application for a pardon to the Governor of Florida.

## IV. *Drug Conviction a Per Se Bar to Asylum and Withholding*

### A. *Particularly serious crime*

■ Petitioner contends that the BIA erred in upholding the immigration judge's decision that, irrespective of his classification as an aggravated felon, Petitioner's drug conviction rendered him ineligible for asylum and withholding of deportation because it constituted *per se* a "particularly serious crime." Petitioner claims that because he received a pardon from the Governor of Florida, he is no longer classifiable as an aggravated felon. Therefore, Petitioner argues, the BIA should make an individualized determination as to whether or not his 1986 conviction constitutes a particularly serious crime.

Withholding of deportation is not available to an alien who, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1253(h)(2)(B). The Act defines particularly serious crime to include an aggravated felony. 8 U.S.C. § 1253(h)(2), as amended by Immigration Act of 1990, P.L. 101–649, § 515, 104 Stat. 5053. In addition, 8 C.F.R. § 208.14 provides that an application for asylum shall be denied if "[t]he alien, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community."

Petitioner's argument that his pardon erases his status as an aggravated felon, and that therefore his drug conviction should not be considered a *per se* particularly serious crime, is inapposite given this Court's decision with respect to the pardon issue.

■ The Act specifically provides that an alien convicted of an aggravated felony has been convicted of a particularly serious crime. *See* 8 U.S.C. § 1253(h)(2)(B), *as amended.* Accordingly, this Court holds that there was sufficient evidence to support the BIA's decision that Petitioner would not be eligible to apply for asylum or withholding of deportation regardless of whether his application for a pardon was successful. Notwithstanding his pardon, Petitioner is an alien convicted of a particularly serious crime and, as such, is ineligible for asylum or withholding of deportation.

### B. *Danger to the community*

■ In addition, Petitioner argues that even if his drug conviction constitutes a particularly serious crime, the BIA erroneously failed to conduct a separate inquiry into whether Petitioner is a danger to the community. Petitioner reads the withholding of deportation provisions as imposing a two-prong test, regardless of the alien's aggravated felony status.

Petitioner's interpretation of the withholding of deportation provision, however, is not supported by the caselaw. The Court of Appeals for the Second Circuit recently considered this issue in *Ahmetovic v. INS*, 62 F.3d 48 (2d Cir.1995). In that case, the Second Circuit ruled that an alien convicted of a particularly serious crime is automatically deemed a danger to the community. *Ahmetovic*, 62 F.3d at 53. Indeed, every circuit that has considered this issue has held that once it is determined that an alien has been convicted of a particularly serious crime, no separate inquiry is necessary to determine if he is also a danger to the community. *See Garcia v. INS*, 7 F.3d 1320 (7th Cir.1993); *Mosquera–Perez v. I.N.S.* 3 F.3d 553 (1st Cir.1993); *Urbina–Mauricio v. I.N.S.*, 989 F.2d 1085 (9th Cir.1993); *Martins v. INS*,

---

[E]ven after the 1990 amendments, the [Immigration and Nationality Act] recognizes for purposes of determining deportability only "full and unconditional pardons by the President of the United States or by the Governor of any of the several States" that relate to crimes of moral turpitude or aggravated felonies, *but not to narcotics-related violations.*
*Mullen–Cofee*, 976 F.2d at 1379 n. 10 (citing 8 U.S.C.A. § 1251(a)(2)(A)(iv)) (emphasis added).

972 F.2d 657 (5th Cir.1992); *Arauz v. Rivkind,* 845 F.2d 271 (11th Cir.1988).

Thus, this Court finds no error in the BIA's conclusion that Petitioner is a danger to the community, within the meaning of the Act, because he was convicted of a "particularly serious crime."

### V. *Estoppel*

▮ Petitioner argues that his lengthy detention at Guantanamo amounts to affirmative misconduct by the INS, and that the INS should therefore be estopped from denying him the opportunity to apply for asylum in the United States. Petitioner contends that on several occasions, despite knowledge of his 1986 drug conviction, the INS told him that he was "screened in" and would be sent to the United States. Further, Petitioner alleges that "the INS used the promise that he would be sent to the United States as a vehicle to obtain his cooperation." Petitioner's Memo. at 34.

▮ It is well settled that only in very limited circumstances may the federal government be estopped by the conduct of its employees. *See, e.g., INS v. Pangilinan,* 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988) (stating that normal rules of estoppel do not apply to the INS because it is enforcing the public policy established by Congress); *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) ("the Government may not be estopped on the same terms as any other litigant"); *Hanley v. Donovan,* 734 F.2d 473, 476 (9th Cir.1984) (equitable estoppel should be applied against the government with utmost restraint).

▮ Estoppel is an equitable doctrine invoked to avoid injustice in certain cases. The party claiming the estoppel must establish: (1) a misrepresentation; (2) that the person making the misrepresentation had reason to believe that the listener would rely on it; (3) that it was reasonable for the party asserting the estoppel to rely on the misrepresentation; and (4) that the party asserting the estoppel relied on the misrepresentation to his detriment. *Heckler,* 467 U.S. at 59,

104 S.Ct. at 2223. In addition to these traditional elements, a party seeking to estop the government must also demonstrate affirmative misconduct. *INS v. Miranda,* 459 U.S. 14, 17, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982).

▮ As an initial matter, this Court considers whether there was a showing of affirmative misconduct by the INS. Petitioner contends that his 18-month detention at Guantanamo constitutes affirmative misconduct by the INS. Petitioner's detention came to an end as a result of this Court's order in *Haitian Centers Council, Inc. v. Sale,* 823 F.Supp. 1028 (E.D.N.Y.1993). In that case this Court held, in part, that the detention of the "screened-in" Haitians at Guantanamo was a violation of the detainees' liberty interest in not being indefinitely detained and a violation of their due process rights. *Id.* at 1041–42, 1045. Accordingly, this Court finds that Petitioner's detention at Guantanamo constituted affirmative misconduct by the government.

Petitioner asserts that the INS represented to him that he was "screened in," and that he relied on these statements to his detriment. The circumstances cited by Petitioner, however, do not establish a definite misrepresentation necessary to warrant estoppel against the government. The term "screened in" refers to the fact that a determination was made that Petitioner had a credible fear of persecution. *See Haitian Centers Council, Inc. v. Sale,* 823 F.Supp. at 1033, n. 1. Petitioner was simply "screened in" as a possible refugee, without regard to other potential bars to his eligibility to apply for asylum. Because Petitioner was in fact "screened-in" and brought to the United States, we find that no misrepresentation was made. Therefore, Petitioner's estoppel claim must fail.

### VI. *Parole*

▮ Petitioner asks this Court to review the INS's decision denying him parole. Petitioner contends that the parole denial was based on an error of law and constitutes an improper abuse of discretion by the INS.

As a threshold matter, this Court notes that review of a decision relating to the parole of an alien is separate and distinct from review of an exclusion order under 8 U.S.C. § 1105a. Thus, review of the INS's parole denial must be made through a separate habeas corpus petition. *See Bertrand v. Sava*, 684 F.2d 204, 210 (2d Cir.1982) (holding that federal courts may exercise habeas corpus jurisdiction to review allegation that INS abused its discretion in making parole decisions).

 Even if Petitioner had followed the proper procedure for seeking review of the parole decision, the scope of this Court's review of such a petition is necessarily narrow. *See id.* at 211. The Court of Appeals for the Second Circuit has held that

> [a]s long as the Attorney General exercises his broad discretion under 8 U.S.C. § 1182(d)(5) to determine whether unadmitted aliens may be paroled pending final determinations of their applications for admission to the United States, his decision may not be challenged on the grounds that the was not exercised fairly in the view of the reviewing court or that it gave too much weight to certain factors ... and too little to others.

*Id.* at 212.

 Because "the Attorney General's exercise of his broad discretionary power must be viewed ... as presumptively legitimate," Petitioner has the burden of proving that "discretion was not exercised or was exercised irrationally or in bad faith." *Id.* at 212–13. Petitioner contends that the INS's decision denying parole was based on the erroneous legal interpretation of the effect that his pardon would have on his eligibility to apply for asylum. This argument fails in light of our ruling on the pardon issue. In addition, Petitioner claims that the INS ignored the positive equities in his favor. Applying the strict standard set forth by the Second Circuit in *Bertrand v. Sava*, this argument also must fail.

Accordingly, this Court holds that even if Petitioner had filed a separate habeas petition challenging the parole decision, he would be unable to meet his heavy burden of establishing that the INS acted irrationally or in bad faith.

## CONCLUSION

In denying the petition, this Court is not unmindful of the seeming harshness in turning Petitioner away because of a single drug conviction which occurred almost a decade ago. This Court's decision, however, is compelled by the statutes and regulations in question. As the legislative scheme has been properly interpreted and implemented, this Court must defer to the BIA's decision.

For the reasons stated above, the petition for habeas corpus is hereby DENIED.

SO ORDERED.